(No. 36511.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LONNIE ADAMS *et al.,* Plaintiffs in Error.

*Opinion filed September 28, 1962.*

EUCLID L. TAYLOR and GEORGE N. LEIGHTON, both of Chicago, for plaintiffs in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and MARVIN E. ASPEN, Assistant State's Attorneys of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This case comes before us on a writ of error for the purpose of reviewing the murder convictions of three brothers—Lonnie Adams, James Adams and Maynard

Adams. A joint trial was had in the criminal court of Cook County before a jury which fixed the punishment of Lonnie Adams and James Adams at death, and that of Maynard Adams at life imprisonment. The errors alleged on review are: the erroneous admission into evidence of two photographs of decedent taken at the mortuary shortly after the killing occurred; undue and prejudicial restriction of direct examination of defense witnesses and cross-examination of People's witnesses; erroneous exclusion of expert testimony explaining the results of a chemical analysis of decedent's blood; improper rulings upon instructions and insufficiency of the evidence to establish guilt beyond a reasonable doubt.

While the record in this case is voluminous, the essential elements of the case can be rather briefly summarized. Charles Miller was stabbed to death by defendants about midnight on August 17, 1959, in the fourteen hundred block of East Sixty-seventh Street in the city of Chicago. As to other facts, a dispute or confusion exists. The defendants claim the killing of decedent was a necessary act of self-defense. The testimony admitted or offered on behalf of defendants would indicate that all three defendants were in the Bamboo Lounge, a tavern on East Sixty-seventh Street, earlier in the evening; that while there, defendant James Adams saw decedent, Charles Miller, and recognized him as the person who had assaulted and cut said defendant earlier in the year; that decedent came up to defendant James Adams and said "You ——————, I thought I killed you last time"; that decedent then left the tavern, and defendants remained there for 30 or 40 minutes and then left, walking down the sidewalk on the north side of the street; that decedent came out of a tavern on the opposite side of the street, crossed over to defendants and cut Lonnie Adams with a knife; that in the ensuing fight .decedent was stabbed to death.

The State's witnesses included two eyewitnesses who

testified that they were standing near the door of the Bamboo Lounge when their attention was called to a fight between "the Adams brothers and Miller"; that neither witness saw the decedent or defendants in the Bamboo Lounge earlier that evening, and that the witnesses first saw the defendants chasing decedent down the sidewalk on the north side of the street. When defendants caught him, he broke away and ran, fell near the corner, and defendants there stabbed and kicked him repeatedly.

It is undisputed that, following the fight, defendants left in their car, were followed by one of the witnesses who secured their license number, notified police, and they were arrested. It is also undisputed that James Adams and Lonnie Adams were rather severely cut in the fight, and that a knife was found under decedent's body following the fracas.

Numerous discrepancies exist in the testimony, but the basic disagreement is as to how the fight commenced and continued. This problem was essentially one of the credibility of the witnesses, and was for the jury to determine. Since the jury fixed the punishment, it was important that no testimony which might conceivably affect the finding of guilt or innocence, or the punishment to be imposed, be excluded if properly admissible. *Nowacryk* v. *People,* 139 Ill. 336; *People* v. *Winchester,* 352 Ill. 237; *People* v. *Cassler,* 332 Ill. 207.

During the course of the trial the defendants sought to show that on April 28, 1959, some 3½ months prior to the occurrence with which we are concerned, defendant James Adams, as he was going home from work, was assaulted by a person to him unknown at that time; that James Adams on that occasion was severely cut about the face and neck, forty-one sutures being required to close the wounds; that he reported this assault to the police immediately upon being released from the hospital, but was unable to name his assailant, and no subsequent action was taken thereon. Ob-

jections to questions designed to establish the events of April 28th were sustained, and no proof was ever admitted into the record that defendant James Adams had been assaulted earlier in the year or that the decedent was recognized in the Bamboo Lounge by James Adams as the same individual who had committed the assault upon him and that James Adams thereupon informed his brothers of this. At the close of the case, defendants again offered to prove the details of the occurrence of April 28th, the claimed identity of decedent, and that Lonnie Adams and Maynard Adams were told by James Adams of decedent's identity at the tavern.

The instant trial was the second which had occurred in the case, the first trial having resulted in a conviction and a sentence of life imprisonment for Lonnie Adams and James Adams, following which a new trial was granted by the trial court. In connection with the first trial of the two brothers last named, it should be noted that the State informed the court at the commencement of the trial that the State did not consider the facts in that case such as to justify the imposition of a death sentence, and that the State did not wish to attempt to qualify the jurors serving in the case to impose the death penalty. It also needs to be borne in mind that the basic disagreement in the testimony in this case is as to how the struggle between the defendants and the decedent commenced. The contention of the defendants is that the decedent approached the defendants, cut one of them with a knife, and that the subsequent stabbing of the decedent was a necessary act of self-defense. The testimony of the State's witnesses would support the charge of murder. Since, however, the defendants do raise the claim of self-defense, and the testimony offered by them would, if believed, corroborate, to some extent, this claim, we must give serious consideration to the propriety of the ruling of the trial court in excluding the evidence relating to the April 28th occurrence.

This court has repeatedly held that evidence as to the violent disposition of the decedent and prior threats or misconduct by the decedent directed towards the defendant is admissible in a prosecution of the defendant for killing the decedent where the defendant relies upon self-defense and preliminary testimony establishes an act of aggression by decedent. *Cannon v. People*, 141 Ill. 270, 280; *Davis v. People*, 114 Ill. 86, 95; *Carle v. People*, 200 Ill. 494, 504; *People v. Dugas*, 310 Ill. 291, 296; *People v. Stapf*, 324 Ill. 404, 409; *People v. Golson*, 392 Ill. 252, 255; *People v. Rappaport*, 362 Ill. 462, 465 *et seq.*; *People v. Arcabascio*, 395 Ill. 487.

In the early case of *Cannon v. People*, 141 Ill. 270, this court set forth the reasons for admitting testimony relating to prior threats or misconduct by the decedent in the following language: "When the defendant is the assailant or commences the affray, he will not be entitled to show in defense the vicious or wicked disposition of the person whom he has slain. Having sought and brought on the affray he cannot shield himself from punishment for the homicide by showing that he aroused the vicious or wicked passions of the party killed. But when evidence is submitted from which the court can see that the jury may, if they give it credence, find that the party killed was the assailant, and that the defendant acted in self-defense, such evidence becomes admissible, as tending to show the circumstances by which the defendant was surrounded, and the extent of the apparent danger to his life or person, and from which he might be justified in believing that his life was in danger, or that he was in danger of suffering great bodily harm at the hands of the assailant, and illustrating to the jury the motive by which he was influenced." We applied the same rule in *People v. Dugas*, 310 Ill. 291, and remanded that cause for a new trial because of the failure of the trial court to admit testimony by defense witnesses as to prior difficulties between the defendant and the decedent in which the de-

cedent allegedly had been the aggressor. That this has been and is the rule in this State is further indicated by the following decisions: *Carle* v. *People,* 200 Ill. 494; *People* v. *Golson,* 392 Ill. 252; *People* v. *Stapf,* 324 Ill. 404; *People* v. *Rappaport,* 362 Ill. 462.

It is, therefore, our opinion that proof of the April 28th assault upon James Adams and subsequent identification of decedent as the assailant should have been permitted by the trial court. Refusal to do so constituted prejudicial error requiring a new trial.

Since this case must be retried and other errors are alleged which may recur on a new trial, we consider it prudent to comment thereon. Among these is the contention that the admission of certain photographs of decedent, showing the location and nature of the wounds, was prejudicial to defendants. We have examined these pictures carefully. Their admission was a discretionary matter with the trial judge, and we cannot say that he abused his discretion in this regard. *People* v. *Jenko,* 410 Ill. 478.

Defendants also assert that error was committed in the court's refusal to permit Dr. Walter Camp, an admittedly qualified toxicologist, to explain the results of a blood alcohol test upon decedent. The defendants claimed decedent had been in a tavern earlier that evening, and the presence of alcohol in decedent's blood would corroborate this contention to some extent. It would also be relevant for the jury to consider in determining who was the aggressor in the fight. A written report by Dr. Camp showing the presence of 304 milligrams of ethanol per 100 milliliters of blood in decedent's blood stream was received in evidence, but objections to all questions directed to securing an explanation of this report were sustained.

While this court has not previously passed upon the admissibility of tests designed to establish the amount of alcoholic content in an individual's blood stream, such tests are generally accepted by the medical profession, courts and

legislative bodies as reliable, with a direct analysis of the blood, as was here present, being considered the most dependable method. (6 Am. Jur. Proof of Facts Annotated 494, *et seq.*) We believe that evidence of such test, predicated upon a sufficient foundation, is here admissible. It is further our opinion that the results of such tests, stated in professional terminology, are well-nigh meaningless to the average juror. Expert testimony interpreting such results is not only admissible but desirable, and Dr. Camp should have been permitted to testify as to his interpretation of the product of the test. 6 Am. Jur. Proof of Facts Annotated 494, *et seq.*

The judgment of the criminal court of Cook County as to all defendants is therefore reversed, and this cause remanded for a new trial.

*Reversed and remanded.*