(No. 58937

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. GARY BARNARD, Appellant.

*Opinion filed October 19, 1984.*

222

224

SIMON, J., dissenting.

C. David Nelson, of Nelson & Stewart, of Harrisburg, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and David W. Hauptmann, State's Attorney, of Harrisburg (Mark L. Rotert and Ellen M. Flaum, Assistant At-

torneys General, of Chicago, and Frank J. Bieszczat, of the State's Attorney's Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

CHIEF JUSTICE RYAN delivered the opinion of the court:

The defendant, Gary L. Barnard, was charged by information in the circuit court of Saline County with three counts of murder, under the provisions of sections 9—1(a)(1) and (2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (2)). The defendant was also charged with three counts of armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2) based on the different murder charges. Following a jury trial the defendant was convicted of one count of murder. Verdicts of not guilty were returned on the armed-violence counts. The defendant was sentenced to 25 years' imprisonment and fined $5,000 by the court. On appeal to the appellate court, the defendant contended that the trial court abused its discretion in imposing the $5,000 fine. He also contended in the appellate court that he should have received a credit of $145 toward his fine for the time he spent in custody prior to sentencing. The third issue raised in the appellate court urged that the trial court erred in considering the allegations of the defendant's prior criminal acts which had not resulted in convictions. The appellate court, in a Rule 23 order (87 Ill. 2d R. 23), vacated that part of the circuit court order imposing a fine upon the defendant and remanded it to the circuit court for further hearings on defendant's ability to pay a fine. (115 Ill. App. 3d 1161.) The remainder of the judgment of the circuit court was affirmed. We granted the defendant's petition for leave to appeal. 87 Ill. 2d R. 315.

On June 15, 1981, Dennis Price (the decedent), and Larry Moore and Stanley Jackson drove up in front of

the defendant's house at about 6:45 in the evening. The three occupants of the automobile had been drinking. The defendant went out to the automobile and had a brief conversation with the three, after which the occupants of the automobile left to get something to drink, and the defendant returned to his house to watch television. After a while he thought that the men might return and cause some trouble, so he went to his bedroom, loaded a .22-caliber pistol and, leaving the pistol in the bedroom, returned to the other room to again watch television. A short time later, decedent and Moore came back and entered the house without invitation. Jackson did not come into the house. Price and Moore argued with each other off and on for about half an hour as the defendant was watching television. Finally the defendant asked them to leave, and when they made no attempt to do so, he went into the bedroom and got the pistol which he had previously loaded. He returned to the living room, pointed the gun at Price and told him to leave. Price started walking toward the defendant with his hands held above shoulder height, saying, "You don't want to do that, man. You don't want to do that." Defendant fired one shot into Price's chest when he was about six feet from the defendant. The defendant then called the Harrisburg police department, identified himself, gave his address, and said that he had just shot Dennis Price and that the police should come and send an ambulance. Price died from the wound.

The defendant first contends that the jury's verdict of guilty of murder and not guilty of armed violence based on murder requires reversal of the murder conviction, citing our recent decision in *People v. Frias* (1983), 99 Ill. 2d 193. We do not agree. In *Frias*, the jury returned a verdict of not guilty of murder and guilty of armed violence based on murder, which is the reverse of the findings in this case. In *Frias* we held that if the jury found

the defendant not guilty of murder, it could not find that the defendant had committed armed violence based on murder. The finding that the defendant had not committed the underlying felony, on which the armed-violence charge was based, by virtue of collateral estoppel, required that the armed-violence conviction be reversed. (99 Ill. 2d 193, 203.) We found the verdicts to be legally inconsistent. While there may be some logical inconsistency in the verdicts in our case, they are not legally inconsistent. The finding of not guilty of armed violence based on murder is not a finding that the defendant did not commit murder. We do not know what prompted the jury's not guilty verdict on the armed-violence count. It could have been an expression of lenity which, of course, does not render the verdicts legally inconsistent. *Frias* does not require a reversal of the murder conviction in this case.

In addition to the *Frias* issue, the defendant in this court urges that he was deprived of a fair trial by certain evidentiary rulings and by certain errors in the instructions to the jury. He also argues that he was deprived of effective assistance of counsel in the trial court and in his appeal to the appellate court. As noted earlier in this opinion, the errors in the trial court now argued and the question of trial counsel's competency were not raised in the appeal to the appellate court, and have been raised for the first time in the defendant's petition for leave to appeal to this court.

At the trial defendant was represented by the public defender. Following the defendant's conviction, the State Appellate Defender was appointed to represent defendant on appeal to the appellate court. On July 22, 1983, the appellate court entered its order, which affirmed the defendant's conviction. The time for filing a petition for leave to appeal from that order expired August 26, 1983, under our Rule 315(b) (87 Ill. 2d R. 315(b)). On August

26, 1983, defendant's present counsel filed a motion for extension of time within which to file a petition for leave to appeal alleging that he had been retained to represent the defendant on August 25, 1983. In this motion it was alleged that the defendant did not receive a fair trial and that he did not have adequate representation by counsel at either the trial or the appellate level. He further alleged that he desired to raise issues on appeal to this court going to the merits of the case, and that he desired to avoid having any such issue treated as waived because of the failure of appointed counsel to raise them. Objections to this motion were filed by the State. This court denied the defendant's motion. On September 16, 1983, the defendant filed a motion to reconsider the denial of the previous motion and attached thereto the proposed petition for leave to appeal, which contained the alleged trial errors it is now asserted require the granting of a new trial. The petition for leave to appeal also asserted that the defendant was denied effective assistance of counsel in both the trial and the appellate courts. Defendant's motion also asserted that it would be a waste of judicial resources for this court to deny the defendant's motion only to have him raise the same issues in the trial court in the post-conviction hearing proceeding (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*). We granted the defendant's motion and permitted the filing of the petition for leave to appeal.

The State, in its brief, argues that the defendant's failure to raise in the appellate court the issues now argued constitutes waiver. This court has held that issues that could have been raised in the appellate court, but were not, are deemed to have been waived. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 209; *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 526.) However, this court has also held that under our Rules 366 and 615 (87 Ill. 2d Rules 366, 615),

this court may decide issues not presented to or decided by the appellate court. *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 520; *Hux v. Raben* (1967), 38 Ill. 2d 223, 224.

We do not view the *Gatto* and *Hux* decisions and the cases cited therein to be inconsistent with *Hammond* and *Harris Trust.* The rationale of *Gatto* is set out in *Hux v. Raben* (1967), 38 Ill. 2d 223, 224, as being similar to the "plain error" concept expressed in our Rule 615 (87 Ill. 2d R. 615). The court, in *Hux*, also stated:

"These provisions recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system." *Hux v. Raben* (1967), 38 Ill. 2d 223, 225.

We have held on many occasions that plain error is a limited exception to the general waiver rule. (See *People v. Roberts* (1979), 75 Ill. 2d 1.) The requisites for applying this limited exception, as noted in *Roberts* and cases discussed therein, are not present in the case before us. Except to the extent discussed below, the waiver rule applies.

The trial errors raised by the defendant are not of constitutional dimension and cannot be urged as the basis for the reversal of a conviction under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*). However, since defendant may raise the question of trial counsel's competency under the Post-Conviction Hearing Act, it is appropriate that the alleged trial errors be considered as they relate to the question of the defendant's constitutional right to adequate legal representation. This court has held that the doctrine of waiver ought not to bar issues from consideration where the alleged waiver stems from incompetency of appointed counsel on appeal. (*People v. Frank* (1971),

48 Ill. 2d 500, 503.) In *Frank* this court also stated that there is no obligation of appointed counsel to brief every conceivable issue on appeal and that it is not incompetence for counsel to refrain from raising those issues which, in his judgment, are without merit, unless his appraisal of the merits is patently wrong. *People v. Frank* (1971), 48 Ill. 2d 500, 505.

In the trial of this case defense counsel's strategy was to establish the killing as a justified homicide. In the opening statement defense counsel stated that he would raise the defense of self-defense and defense of the defendant's dwelling. Counsel sought to follow that plan through the trial.

Defendant now argues in this court that the trial court erred in foreclosing any evidence of the decedent's reputation for violence and what the defendant knew about the decedent. It is argued that this evidence was relevant to supply insight into the defendant's state of mind and his beliefs regarding the danger he was in. The trial court did not permit evidence of this nature because, as the court stated during a conference in chambers, there was nothing in the record to disclose that the decedent had committed an act of aggression. The evidence disclosed that the decedent had not argued with the defendant and he had not threatened him. It was not until the defendant went into his bedroom, procured his loaded pistol, returned to the living room, and pointed it at the decedent that there was any evidence of a conversation between decedent and the defendant. In a conference between the court and counsel in chambers the court, citing *People v. Adams* (1962), 25 Ill. 2d 568, held that the reputation and character of the decedent could not be shown because there had been no evidence that he had committed an aggressive act.

We noted above that this issue was not raised in the appellate court by appellate counsel. As stated in *People*

*v. Frank* (1971), 48 Ill. 2d 500, it is not incompetence for counsel to refrain from raising issues which, in his judgment, are without merit, unless his appraisal of the merits is patently wrong. In this case the trial judge based his rulings on the language of a decision of this court. He found that there was no evidence that decedent had committed an aggressive act. Whether or not that evaluation of the evidence is correct is not the question before us. We decide only that under these circumstances the defendant's appellate counsel's decision not to raise this issue on appeal is not patently erroneous.

Defendant now argues that there was some evidence that he had a subjective belief that the use of force was necessary and that the court should have *sua sponte* given a self-defense and voluntary-manslaughter instruction. During the instruction conference defense counsel objected to the State's issues instruction on murder, arguing that the State must also prove that the killing was not justified. The court agreed, saying that this presented a different question than the evidentiary question of decedent's reputation discussed above. The court held that under *People v. Lockett* (1980), 82 Ill. 2d 546, if there is any evidence of self-defense then a manslaughter instruction should be given. The court then asked defense counsel if he had an issues instruction on murder which contained the element of justification. Defense counsel replied that he did but asked if his instruction were given would an instruction on manslaughter be automatically given. The court asked defense counsel if he was making a motion to that effect. Defense counsel said that he was not, and he withdrew his instruction. The court then gave the State's instruction that did not include the element of justification and showed that it was given over the objection of the defendant.

With regard to the instruction issue, it is apparent that defense counsel did not want the jury to be given a

manslaughter instruction. It appears- that the defense counsel's strategy was to present the jurors with only the option of finding the defendant guilty or not guilty of the murder charge, and not to present them with the alternative of voluntary manslaughter, on which they might reach a compromise verdict. We cannot say that this strategy demonstrated incompetence of counsel.

Also, we find that under these circumstances the court was not under an obligation to give a self-defense and a manslaughter instruction *sua sponte*. The burden of preparing instructions is primarily on the parties and not the trial court. Generally, the trial court is under no obligation either to give instructions or to rewrite instructions tendered by counsel. A party may not raise on appeal the failure to give an instruction unless he shall have tendered it. *People v. Underwood* (1978), 72 Ill. 2d 124.

The trial judge was well aware of defense counsel's reluctance to have the jury given an instruction on manslaughter. It would therefore not have been proper for the judge to interfere with defense counsel's strategy and give the self-defense and voluntary-manslaughter instruction *sua sponte*. (See *People v. Precup* (1978), 73 Ill. 2d 7.) It was therefore not incompetence for the appellate counsel to refrain from raising this issue on appeal. See *People v. Frank* (1971), 48 Ill. 2d 500.

The defendant in this court cites several instances wherein his trial counsel's performance demonstrated his lack of competence. He cites several instances where counsel failed to object to allegedly damaging hearsay testimony of one of the investigating police officers. Following the direct examination of this officer, defense counsel cross-examined him about this hearsay evidence which concerned statements made by Moore to the officer. It should be remembered that Moore had been drinking with the decedent on the day of the shooting

and was in the defendant's house when the decedent was shot. Much of the hearsay evidence elicited on direct examination and the evidence brought out on cross-examination concerned the decedent's earlier fight that day with Moore and the reason for the fight. Since a part of defense counsel's strategy was to depict the decedent as an aggressive, quarrelsome person and to emphasize his drunken condition and argumentive nature, we cannot say that the failure to object to this hearsay evidence indicates a lack of competence on the part of the defendant's trial counsel.

Defendant also argues that defense counsel's failure to move for a mistrial, and failure to make offers of proof when the prosecution's objections were sustained, demonstrated incompetence. The Supreme Court has recently considered the effective-assistance-of-counsel requirement of the sixth amendment of the Federal Constitution. (See *Strickland v. Washington* (1984), 466 U.S. ____, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The court, in that opinion, adopted reasonably effective assistance as the standard for attorneys' performance and counseled against interfering with the constitutionally protected independence of counsel or restricting the wide latitude counsel have in making tactical decisions. (466 U.S. ____, ____, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.) It was also stated that a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (466 U.S. ____, ____, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.) The court further recognized that an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on that judgment. That is, any deficiency in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance. 466 U.S. ____, ____, 80 L. Ed. 2d 674,

699, 104 S. Ct. 2052, 2069.

Judging defendant's trial counsel's performance by the standards of *Strickland,* it cannot be said that appellate counsel's decision not to raise the trial counsel's failure to object to hearsay testimony, his failure to move for a mistrial, and his failure to make offers of proof on appeal to the appellate court was patently wrong. Therefore, these issues, not having been raised in the appellate court, are deemed to have been waived. See *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 209; *Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 526.

Following the reading of the instructions, the jury retired to consider the case at 3:15 p.m. At 6:30 p.m. the jury sent three questions to the court:

> "Can we find Mr. Barnard guilty of armed violence without finding him guilty of murder?
>
> There is [*sic*] three different definitions of murder. Also, three different definitions of armed violence. Do we have to find him guilty or not guilty of any one of these definitions or all three definitions?
>
> Is there any way to find him guilty of a lesser charge other than murder or armed violence?"

The court, after having secured the agreement of counsel, responded to these questions as follows:

> "You cannot find the defendant guilty of armed violence without finding him guilty of murder. You can find the defendant guilty of murder on any one of the three counts. You do not have to find him guilty of all three counts of murder in order to return a guilty verdict on the murder charge. The same is true of the armed violence charges. You cannot find the defendant guilty of a charge other than murder or armed violence."

After having received these responses the jury continued to deliberate until 11 p.m., at which time the jury informed the bailiff that they were deadlocked. At that time a deadlock instruction was read to the jury by the court. Both

parties stated they had no objection. At midnight the jury submitted another question to the court:

"Can we find Barnard guilty of one count of murder and not guilty of armed violence."

The court answered this question by stating:

"The jury has the authority to find the defendant guilty of one count of murder and not guilty of armed violence."

The prosecutor agreed with the giving of this response; however, defense counsel objected to it.

Shortly before 1 a.m. the jury asked another question of the court:

"We want to know if we can charge Barnard with one count of murder and can we specify which count that is or by signing the guilty form, would we be charging him with all three counts automatically."

With agreement of counsel the court answered this question:

"If the jury finds the defendant guilty of one count of murder beyond a reasonable doubt, all that is required is signing the appropriate verdict form. This does not mean that the jury would be finding the defendant guilty of all three counts of murder."

A few minutes later the jury asked another question:

"If we find Barnard guilty of this one charge will it be read and agreed this to be the only charge?"

The court replied:

"After discussing the matter with counsel in chambers it would appear that the only answer this court can give at this time is as follows: 'The answer to the former question submitted by the jury to the court applies and that is all I can say at this point'."

At 1:30 a.m. the jury returned verdicts of guilty of murder and not guilty of armed violence. On the murder verdict was a handwritten notation "on one count only."

Defendant now contends that the lengthy deliberation

and the many questions submitted by the jury indicated that the instructions were hopelessly equivocal and that the jury was not given proper guidance by the court. This argument, of course, relates to the prior argument that the court should have *sua sponte* instructed the jury on self-defense and voluntary manslaughter. The defendant also argues in this court that the armed-violence issues instruction given in this case included the element of the absence of justification, whereas the issues instruction for murder given in this case did not contain the statement that the burden was on the People to prove the absence of justification. The defendant argues that this might well have led the jury, which acquitted Barnard of armed violence, to conclude that the absence of justification was not required to be proved in the murder case. We noted above that during the conference on instructions the defendant objected to the State's murder issues instruction because it did not contain this element. However, it appears from the discussion between court and counsel in chambers that defense counsel did not tender a proper instruction, although he stated that he had one because he was concerned that the giving of such instruction would also require the giving of a voluntary-manslaughter instruction. Thus the issue of whether the killing was justified was removed from the case by defense counsel. Defendant now argues that the failure of his attorney at the trial to submit a proper murder issues instruction and self-defense and manslaughter instructions, after the jury inquired if they could find Barnard guilty of a lesser charge, constitutes ineffective assistance of trial counsel. As noted earlier, these issues were not raised by counsel in the appellate court and are therefore waived unless it can be said that appellate counsel's viewing of this issue to be without merit is patently wrong. (*People v. Frank* (1971), 48 Ill. 2d 500, 505.) The failure of defendant's trial counsel to tender

self-defense and manslaughter instructions at this stage may well have been part of the same strategy which we noted earlier to force the jury to vote guilty or not guilty on the murder charge and not to give the jury an opportunity to compromise by finding the defendant guilty of manslaughter. By propounding the questions to the judge, the jury indicated that there was a reluctance to find the defendant guilty of murder. With knowledge of that, defense counsel may well have been encouraged to adhere to the same reasoning that prompted his refusal to tender self-defense and manslaughter instructions at the instruction conference. Under these circumstances, appellate counsel could properly view the failure to tender the instructions at this stage as a tactical choice and that the failure to do so precluded the raising of this issue on appeal. We cannot say that the appellate counsel was patently wrong in not raising this question in the appellate court.

Judging the performance of defendant's trial counsel and of his appellate counsel as a whole, we cannot say that the defendant was denied his constitutional right to effective assistance of counsel. In reaching this conclusion we have tested the performance of defendant's counsel, both at trial and on appeal, by the standards adopted by the Supreme Court in *Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068. In that case the court held that the defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. It is not enough to show that counsel's errors had some conceivable effect on the outcome of the proceeding. On the other hand, the defendant need not show that counsel's deficient performance more likely than not altered the outcome of the case. To establish ineffective assistance of counsel the defendant must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. (466 U.S. ___, ___, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) The object of an ineffectiveness claim, as the court stated, is not to grade counsel's performance. In light of the large number of ineffectiveness claims now being made in criminal appeals in this State, one admonishment of the Supreme Court in *Strickland* is particularly noteworthy: "Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." (*Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 699-700, 104 S. Ct. 2052, 2070.) The court also advised that if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. Assessing defendant's counsels' conduct in light of these standards, we find that the defendant has not established his ineffective-assistance-of-counsel claim.

For the above reasons the judgment of the appellate court is affirmed and the cause is remanded to the circuit court of Saline County for further proceedings in conformance with the opinion of the appellate court.

*Affirmed and remanded.*

JUSTICE SIMON, dissenting:

I agree with the majority's holding that the verdicts of guilty of murder and not guilty of armed violence are legally consistent. However, I believe that evidence was improperly excluded and the jury was not properly instructed, and therefore the defendant should receive a new trial.

The trial judge erred by refusing to admit evidence of the decedent's reputation for violence. Based on *People v. Adams* (1962), 25 Ill. 2d 568, the trial court ruled that such evidence was admissible only after there was evi-

dence that the defendant acted in self-defense and that the decedent committed an aggressive act toward the defendant. However, we held in *People v. Lynch* (1984), 104 Ill. 2d 194, decided simultaneously with this case, that similar evidence was admissible to prove who was the aggressor. That is an issue in this case. The defendant here was attempting to prove the likelihood that the victim, with his reputation for violence, was the aggressor. However, the trial judge sustained objections to the use of reputation witnesses and to the defendant's own testimony in this regard. The defense in this case was based entirely on justifiable self-defense, and the trial judge's refusal to admit the reputation evidence was critical. I would hold that here, as in *Lynch*, the reputation evidence was admissible to prove who was the aggressor. It would then be up to the jury to decide how much weight to give to the evidence.

Although I agree that we should not be second-guessing trial judges, it is clear here that the trial judge erred when he ruled that there was no aggressive act directed toward the defendant. The record indicates that three individuals who had been drinking came into the defendant's home and stayed for some time. Two of these individuals returned a short time later and began quarreling. The defendant pointedly asked them to leave, but they did not. When the defendant pointed a gun at them, the victim, who was only five or six feet away, began walking toward the defendant with his hands raised above shoulder level, and as he kept coming toward the defendant, he said, "You don't want to do that, man. You don't want to do that." Given the victim's drunken condition, his quarrelsome behavior, and his refusal to depart from the defendant's home when asked, the defendant could have believed that the victim was trying to seriously injure him with his hands, or to wrest the gun from the defendant in order to shoot the defendant. Why would

he walk toward a man holding a gun rather than away from him? This was some evidence that the victim was the aggressor, and evidence of the victim's reputation for violence would have been a proper supplement to this showing.

This error was critical, because it affected two different rulings, both essential to the defendant's theory of self-defense. First, once self-defense is in issue and there is evidence of an act of aggression directed toward the defendant, evidence of the victim's reputation for violence is admissible under *Adams*, the case on which the trial judge relied (*People v. Adams* (1962), 25 Ill. 2d 568), as well as under *Lynch*. Second, the victim's aggressive conduct supports the defendant's argument that the jury should have received a justification instruction.

The State does not dispute the defendant's assertion that the absence of justification is an element of the crime of murder. Instead, the State argues that the trial judge was under no obligation to *sua sponte* instruct the jury regarding either justification or manslaughter, particularly when defense counsel chose not to offer the jury the option of a manslaughter conviction. However, an examination of the record gives a clearer picture of what actually occurred. Defense counsel objected to the murder instruction offered by the State because it did not include the words "without justification." Since the entire defense strategy was to depict this killing as justifiable and therefore excusable, this element was essential to the defense case. When defense counsel asked the trial judge whether a manslaughter instruction would automatically be given along with a justification instruction, the trial judge asked whether defense counsel was making a motion to that effect. The trial judge's comments earlier in the trial led defense counsel to believe that, relying on *People v. Lockett* (1980), 82 Ill. 2d 546, the trial judge would not give a justification instruction

without also giving a manslaughter instruction. It was obvious that the defense strategy was not to offer the jury the option of convicting the defendant of the lesser crime of manslaughter. Faced with the trial judge's refusal to answer his question, along with the judge's response that he could not choose counsel's trial strategy for him, the defense counsel made no motion and did not offer his alternative instruction for murder. The State's instruction was consequently given, over the defense objection.

Section 9—1(a) of the Criminal Code of 1961 plainly states that "[a] person who kills an individual *without lawful justification* commits murder \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a).) There can be no doubt that a defendant who requests an instruction which includes lack of justification is entitled to it. The defendant was improperly prejudiced in this case by the refusal of the trial judge to directly answer counsel's inquiry, and because the trial judge created the misleading impression that he would hold that a justification instruction must always be paired with a manslaughter instruction, thereby forcing counsel, who wished not to raise the issue of manslaughter, to forgo an instruction on a statutory element crucial to his defense strategy. Instead of steering clear of strategy issues, as the trial judge professed to do, it seems to me that he directly involved himself with them. I do not regard a trial as a contest of moves and countermoves. Rather, it should be an effort to assist the jury in determining what really happened. The trial judge, by chilling defense counsel's efforts to include lack of justification in the murder instruction, prevented that from happening.

*Lockett* is distinguishable and does not control this case. In *Lockett*, the defendant's requested manslaughter instruction was refused by the trial court. This court held that, where evidence was presented that the

defendant believed that the killing was justified, both a manslaughter and self-defense instruction should be given. The jury would decide whether or not the defendant's belief was reasonable. (*People v. Lockett* (1980), 82 Ill. 2d 546.) *Lockett* did not address the issue where, as here, the defendant does not wish to have a manslaughter instruction given, but does want the murder instruction to include the element of justification. Since the statute identifies lack of justification as an element of murder, and since there is no requirement that a manslaughter instruction be given in every murder case, I believe that a defendant who provides evidence that the killing is justified is entitled to an instruction on justification, regardless of whether the defendant also requests an instruction on manslaughter. Justification and manslaughter are related but separate legal issues. I do not believe that the law of Illinois requires that they be coupled under all circumstances.

For the reasons stated above, I would have allowed evidence concerning the victim's reputation for violence and I would have allowed an instruction regarding the absence of justification.