2024 IL App (2d) 240005
No. 2-24-0005
Opinion filed November 12, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-1729 |
| TERRY T. COLLINS, | ) ) ) | Honorable David Paul Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Birkett and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Terry T. Collins, was indicted for two counts of aggravated unlawful use of a weapon (AUUW) (counts I and II) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(2), (a)(3)(C) (West 2020)), possession of a firearm-not eligible for a Firearm Owner's Identification (FOID) card (count III) (430 ILCS 65/2(a)(1) (West 2020)), and unlawful possession of a weapon by a felon (UPWF) (count IV) (720 ILCS 5/24-1.1(a) (West 2020)). The trial court granted defendant's motion to sever count IV from the remaining counts. The State dismissed count II and elected to proceed to trial first on count IV.

¶ 2 At trial, the parties stipulated that defendant had been convicted of a felony on March 31, 2011. The jury returned a general verdict, finding defendant not guilty of UPWF. Defendant then

moved to bar prosecution of the remaining counts based upon collateral estoppel/issue preclusion[1] and double jeopardy. The trial court granted the motion in part, dismissing count III and denying the motion as to the AUUW count (count I). The parties each filed motions to reconsider, which the court denied. Defendant appeals (Ill. S. Ct. R. 604(f) (eff. Apr. 15, 2024) (allowing appeal by defendant from denial of motion to dismiss on grounds of former jeopardy)) from the denial of his motion to bar prosecution of the AUUW count and the denial of his motion to reconsider.[2] He argues that the court erred in denying his motion to bar prosecution of the AUUW count, where (1) issue preclusion barred the State from prosecuting him for AUUW, because the ultimate issue of fact—whether he knowingly carried a gun—had previously been resolved by a jury that acquitted him of UPWF, and (2) defendant did not surrender his double jeopardy rights when he chose to sever the UPWF charge. We reverse.

¶ 3                                                  I. BACKGROUND

¶ 4      On February 8, 2022, the State charged defendant in a four-count indictment with two counts of AUUW, possession of a firearm-not eligible for a FOID card, and UPWF. Before trial, the State dismissed one AUUW count, and defendant moved to sever the UPWF count (on the basis that proof that he was previously convicted of a felony, which was required for the UPWF count, could prejudice him as to the remaining counts). The State did not object to severing the

---

[1]We hereinafter use "issue preclusion" instead of "collateral estoppel." *People v. Jefferson*, 2024 IL 128676, ¶ 2 n.1 (noting the Supreme Court's preference for issue preclusion over collateral estoppel in the double jeopardy context).

[2]In appeal No. 2-23-0584, the State appeals from the dismissal of count III.

charge, and the trial court granted defendant's motion to sever. The State elected to proceed to trial on the UPWF charge (count IV) first.

¶ 5    The jury trial on count IV commenced on August 21, 2023. Kane County sheriff's detective Luke Weston testified that, on September 25, 2021, at about 8:30 p.m., he was patrolling on I-90 between Hampshire and Huntley and observed a white BMW X5 with Minnesota license plates commit two traffic violations: changing lanes without signaling and following another vehicle dangerously close. Weston conducted a traffic stop. He testified that the BMW took a "long time" to pull over. Weston approached the vehicle at the rear passenger side, and the back seat occupant—defendant—rolled down the window. The driver was Jimmy Barker, and the front-seat passenger was William Heart. Weston smelled a strong odor of burnt and raw cannabis coming from the vehicle. He called for backup.

¶ 6    Deputy Steven Benson arrived. The officers moved the occupants to their squad cars and searched the BMW after obtaining Barker's consent. Benson located a burnt cannabis blunt in the front center console and a cannabis blunt roller in the front compartment. The vehicle was a hatchback; thus, the officers could access the trunk from the rear passenger seats. They folded the rear passenger seat and located a black bag in the trunk. Inside the bag was a grey Polymer80 firearm with a full magazine and one bullet in the chamber. Weston explained that the rear seat did not completely block access to the trunk area when it was upright, and a person in the rear seat could reach back to the trunk area. The Polymer80 is a "ghost gun" with no serial number that can be purchased, unassembled, off the Internet. Deputy Jeremy Jorgensen arrived at the scene.

¶ 7    After Weston gave defendant *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant initially denied to Weston that the gun was his. However, afterward, he stated that he would take ownership of it because Barker was on his way to see his grandmother, who

was dying. According to defendant, they intended to stay a couple of days, but Weston did not locate any clothing for defendant in the BMW, defendant had no identification, and defendant advised he had no cell phone. Weston advised defendant that all three occupants were felons and that it was not his intention to charge the wrong person "with the gun." Subsequently, defendant stated that he purchased the gun online for a couple of hundred dollars and had put the gun in the trunk when Weston pulled over the BMW. Defendant described the bag that contained the gun (black with the word "cookies" on it but did not mention there was camouflage on it), the gun itself (contained a full magazine), and the ammunition (silver).

¶ 8    Weston further testified that Barker seemed in a hurry to leave, appeared nervous, and stated that he was on parole/probation and had not advised his parole/probation officer that he was leaving Minnesota. Barker's phone contained a picture of a man with a mask, holding a gun to someone's head.

¶ 9    Weston testified that he asked defendant questions to ensure that defendant was not taking the blame for someone else. Weston saw defendant fall at one point, and Benson helped defendant get up and escorted him to Jorgensen's squad car. Defendant was cooperative during the interaction. Barker had about $1700 or $1800 on his person, and Heart had about $1000 on him. Defendant was arrested for possessing a firearm. Barker and Heart were released from custody. A family member of Barker's confirmed that a relative was in the hospital.

¶ 10    Based on his training and experience, Weston testified that I-90 is a drug corridor between Minnesota and Chicago. He believed that the story—about going to a hospital in Chicago without knowing its address—was similar to his experiences with drug smugglers.

¶ 11    Deputy Benson testified that he responded to the stop and saw defendant in the back seat of the BMW. Benson smelled the odor of burnt and raw cannabis emanating from the passenger

side of the vehicle, and Heart showed him a blunt "they" had been smoking. During the search, Benson located in the center console area where Heart had been a blunt roller, a blunt, and a small amount of leafy substance that appeared to be cannabis. While Benson spoke to defendant, defendant yawned, stated he felt dizzy, and fell to the ground. Defendant stated he did not need an ambulance and was having a back spasm.

¶ 12    Deputy Jorgensen testified that he arrived at the scene at about 9:14 p.m. He saw defendant fall to the ground. Defendant declined an ambulance, explaining he had a back spasm. Defendant told Jorgensen that he had drilled holes in the firearm where the retaining pins are placed. Jorgensen testified that Weston mentioned Polymer80 before defendant did.

¶ 13    A joint stipulation, People's exhibit No. 13, was admitted into evidence. It stated, "On March 31, 2011, [defendant] was convicted of a felony." During closing arguments, the prosecution noted that it was required to prove beyond a reasonable doubt both elements of UPWF (*i.e.*, knowingly possessing a firearm and having a prior felony conviction) but, as to the felony-conviction element, stated that "[t]his has already been done away with." "The defense stipulates and the evidence has been received that the defendant is a convicted felon. This has been met by agreement of both parties." Thus, the "second proposition, [is] not in dispute. The only dispute here is the first proposition, whether the defendant knowingly possessed that firearm." Similarly, defense counsel addressed the felony-conviction element and stated that defendant and his attorneys "all agree that the State has proven, we've all signed that stipulation the State read to you saying yes, [defendant]—you heard the stipulation, it said—you heard it—said and admitted that in 2011 he was convicted of a felony. This is off your plate." Counsel also noted that defendant told police that he was a convicted felon. The jury was instructed that the State was required to

prove both elements of the offense beyond a reasonable doubt: (1) "That the defendant knowingly possessed a firearm," and (2) that he "had previously been convicted of a felony."

¶ 14    On August 22, 2023, the jury found defendant not guilty. Subsequently, on September 12, 2023, defendant moved to bar prosecution of counts I (AUUW) and III (possession of a firearm-not eligible for FOID card), arguing that issue preclusion and the guarantee against double jeopardy precluded their prosecution. Defendant noted the joint stipulation and argued that the ultimate issue decided by the jury was whether defendant knowingly possessed a firearm, which was also an element in both counts I and III.

¶ 15    As relevant here, the trial court denied defendant's motion to bar prosecution of the AUUW charge. It determined that the jury resolved only the possession issue at the UPWF trial, as the parties had stipulated to the felony-conviction element of that offense. AUUW, the court found, involved a different element—to knowingly *carry* a firearm—rather than to knowingly *possess* one. "So it's a different element, it's not the same element."

¶ 16    Defendant moved to reconsider, arguing that a person cannot knowingly carry a firearm without knowingly possessing that same firearm and, thus, because the jury determined that the State had failed to prove that defendant knowingly possessed a firearm, the issue of whether he knowingly carried that firearm was foreclosed and could not again be put to a jury, as it was barred by double jeopardy and issue preclusion. The court denied defendant's motion. Defendant appeals.

¶ 17                                      II. ANALYSIS

¶ 18    Defendant argues that the trial court erred in denying his motion to bar prosecution of AUUW (count I). He asserts that prosecution of that charge is barred based on both issue preclusion and double jeopardy grounds. We agree with defendant that issue preclusion bars prosecution of the AUUW count.

¶ 19                                    A. Jurisdiction

¶ 20    We preliminarily address our jurisdiction over this case. Before briefing in this appeal, the State moved to dismiss this appeal for lack of jurisdiction, and we denied its motion. The State asks us now to reconsider our decision. It argues that Illinois Supreme Court Rule 604(f) (eff. Apr. 15, 2024), upon which defendant relies, permits a defendant to appeal from "the denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy." The judgment from which defendant attempts to appeal, the State first argues, is not based on former jeopardy, as that theory is unavailable. *Currier v. Virginia*, 585 U.S. 493, 501-02 (2018) (plurality opinion) (a defendant who chooses to sever charges cannot later argue that the second trial violates double jeopardy clause). Next, the State contends that issue preclusion, the trial court's basis for denying defendant's motion, does not provide the grounds for interlocutory appeal under Rule 604(f), which, in its view, is limited to double jeopardy.

¶ 21    Defendant responds that we have jurisdiction because his motion to bar prosecution was premised on both double jeopardy and issue preclusion, and he asserts both doctrines on appeal. He asserts that the availability of double jeopardy goes to the merits of his arguments, not to our jurisdiction. He also contends that issue preclusion, in the criminal context, is a component of the double jeopardy clause and, therefore, his appeal is properly sought under Rule 604(f).

¶ 22    We conclude that we have jurisdiction over this appeal. In the trial court, defendant raised both double jeopardy and issue preclusion as bases for barring prosecution of the remaining counts in the indictment. The trial court based its ruling primarily on issue preclusion, but defendant's appeal addresses both double jeopardy and issue preclusion. In any event, as defendant notes, in the criminal context, issue preclusion is a component of the double jeopardy clause. Thus, this appeal is properly brought under Rule 604(f). This conclusion is consistent with case law that has

addressed Rule 604(f) appeals involving issue preclusion. See, *e.g.*, *People v. Zegiel*, 179 Ill. App. 3d 649, 650-52 (1989).

¶ 23                                      B. Issue Preclusion

¶ 24     Turning to the merits, defendant argues first that the trial court erred in denying dismissal of the AUUW charge. He contends that prosecution of AUUW is barred under the issue preclusion doctrine, which is not co-extensive with double jeopardy. Issue preclusion, defendant notes, secures the issue preclusive effect of an acquittal, whereas double jeopardy protects against multiple trials. He contends that he met all the requirements for applying issue preclusion: the issue of whether he knowingly possessed the gun was raised and litigated at the first trial, the jury's determination of that issue was a critical and necessary part of the final judgment in the first trial, and the issue sought to be precluded in the AUUW count is the same one decided in the first trial. Further, while he concedes that issue preclusion does not necessarily prevent a new trial, he argues that, in this case, the one issue that was previously decided encompasses the issue the State would be forced to prove to secure a conviction at the second trial. That is, it is not possible to present evidence that he knowingly carried a firearm without also presenting evidence that he knowingly possessed it, which is an issue that has already been resolved in his favor. Thus, defendant argues, because the State is precluded from prosecuting him on the theory that he possessed a gun, we should reverse the trial court's denial of his motion to dismiss the AUUW charge.

¶ 25     Issue preclusion, "in the criminal context, is a component of the double jeopardy clause." *People v. Fort*, 2017 IL 118966, ¶ 34; *People v. Carrillo*, 164 Ill. 2d 144, 147-52 (1995) (separately analyzing double jeopardy and issue preclusion arguments). Under the issue-preclusion doctrine, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson*, 397

U.S. 436, 443 (1970); see also *People v. Tenner*, 206 Ill. 2d 381, 396 (2002) (noting that issue preclusion bars the litigation of an issue that was decided in a prior case). The party seeking to invoke issue preclusion must show that (1) the issue sought to be precluded was raised and litigated in a previous proceeding, (2) the determination of the issue was a critical and necessary part of the final judgment in a prior trial, and (3) the issue is the same one decided in the previous trial. *People v. Jones*, 207 Ill. 2d 122, 139 (2003). Where a defendant claims that a previous acquittal bars a subsequent prosecution for a related offense, issue preclusion requires a court to examine the record of the prior proceeding and determine whether a rational jury could have grounded its verdict on an issue other than the one that the defendant seeks to foreclose from consideration. *Ashe*, 397 U.S. at 444. The application of issue preclusion presents a question of law that we review *de novo*. *People v. Christian*, 2016 IL App (1st) 140030, ¶ 80.

¶ 26 A person commits UPWF if he or she "knowingly *possess[es]* on or about his [or her] person *** any firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction." (Emphasis added.) 720 ILCS 5/24-1.1(a) (West 2022). Thus, the State must prove that (1) defendant has a prior felony conviction and (2) defendant knowingly possessed a firearm. A person commits AUUW, where, as charged here, he or she knowingly "*[c]arries* *** in any vehicle *** any pistol, revolver, stun gun or taser or other firearm *** [and] the person *possessing* the firearm has not been issued a currently valid [FOID] Card." (Emphases added.) *Id.* § 24-1.6(a)(1), (a)(3)(C). Thus, the State must establish that defendant (1) knowingly "carrie[d]" in any vehicle a firearm and (2) so "possess[ed]" the firearm without having been issued a currently valid FOID card. *Id.*

¶ 27 Here, the trial court found that the jury resolved only the possession issue at the UPWF trial, as the parties had stipulated to the felony-conviction element of that offense. AUUW, the

court found, involves a different element—to knowingly *carry* a firearm—rather than to knowingly *possess* one. "So it's a different element, it's not the same element."

¶ 28    Defendant argues that the single issue in the first trial was whether he knowingly possessed the gun. He asserts that the jury, in finding him not guilty, must have found that he did not possess a gun, as that was the only question before it. Thus, the record in the first trial supports the trial court's finding that the jury's determination of whether defendant possessed a gun was the only rational basis for the not-guilty verdict. He asserts that a trial on the AUUW charge would require a second jury to determine the same ultimate question that the first jury already decided in defendant's favor.

¶ 29    The State takes the position that we cannot speculate as to the grounds for the jury's acquittal in the first trial. See *People v. Barnard*, 104 Ill. 2d 218, 227 (1984) (a "finding of not guilty of armed violence based on murder is not a finding that the defendant did not commit murder"); *People v. Rollins*, 140 Ill. App. 3d 235, 242 (1985) ("finding of not guilty of armed violence based on aggravated battery is not a finding that the defendant did not commit aggravated battery"). The State notes that the trial court instructed the jury that it needed to find that the prosecution proved all elements of the offense beyond a reasonable doubt, including whether defendant had previously been convicted of a felony; the jury was given a general verdict form; and there was no specific finding on any specific issue. The State argues that a verdict of not guilty on the UPWF count does not equate to a finding that defendant did not carry a gun in a vehicle for AUUW. Because there was only a general verdict form, it contends, we cannot speculate as to why the jury returned a not guilty verdict or even if it returned a not guilty verdict for impermissible reasons. Thus, it argues, the AUUW charge should proceed to trial. The State also contends issue preclusion does not apply, as *Currier* forecloses its application.

¶ 30     We first address the State's reliance on *Currier*. In arguing this point, the State relies on Justice Gorsuch's opinion, which noted that identity of offenses is the paramount consideration and rejected the proposition that retrial of an issue can be considered tantamount to retrial of an offense when a defendant consents to separate trials. *Currier*, 585 U.S. at 506 (opinion of Gorsuch, J., joined by Roberts, CJ., and Thomas and Alito, JJ.). However, the portion of *Currier* addressing issue preclusion does not contain a majority opinion; therefore, it is not binding on us. See *People v. Jefferson*, 2024 IL 128676, ¶ 37 (observing that, in *Currier*, "eight of the justices addressed the scope of the issue preclusion doctrine and the Court's holding in *Ashe*, and on this question, they were evenly divided"); *cf. Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 269 (2007) (recognizing that plurality opinions are not binding precedent); see also *United States v. Gonzalez-Lauzan*, 437 F.3d 1128, 1139 n.8 (11th Cir. 2006) (plurality opinions are not binding and are merely persuasive); *Marks v. United States*, 430 U.S. 188, 193 (1977) (noting that, in fragmented decisions with no rationale receiving the assent of five Justices, the Court's holding " 'may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds' " (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, J., joined by Powell, and Stevens, JJ.))). Further, Justice Gorsuch's opinion acknowledged that, "in narrow circumstances, the retrial of an issue can be considered tantamount to the retrial of an offense." *Currier*, 585 U.S. at 506 (opinion of Gorsuch, J., joined by Roberts, CJ., and Thomas and Alito, JJ.)

¶ 31     As noted, the jury here returned a general verdict.

> "When a jury returns a general verdict, it can be difficult to ascertain which facts the jury found to be unproved; the difficulty, however, is not insuperable. *People v. Ward*, 72 Ill. 2d 379, 383 ***(1978). The court must ' "examine the record of [the] prior

proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." ' *Ashe*, 397 U.S. at 444 ***, quoting D. Mayers & F. Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions*, 74 Harv. L. Rev. 1, 38-39 (1960). *** The court may not find, for instance, that the jury ' "disbelieved substantial and *uncontradicted* evidence of the prosecution on a point the defendant did not contest." ' *Ashe*, 397 U.S. at 444 n.9 ***, quoting 74 Harv. L. Rev. at 38. The court must set its inquiry 'in a practical frame' (*Ashe*, 397 U.S. at 444 ***) and assume that the jury did not reach its verdict through ' "mental gymnastics" ' (*People v. Borchers*, 67 Ill. 2d 578, 589 ***(1977), quoting *Johnson v. Estelle*, 506 F.2d 347, 352 (5th Cir. 1975))." (Emphasis added.) *People v. Wharton*, 334 Ill. App. 3d 1066, 1078 (2002).

¶ 32 The trial court found that, in the first trial, the only issue for the jury to resolve was whether defendant possessed a weapon, as the parties had stipulated to the felony-conviction element of UPWF. We conclude that the court did not err in its assessment. It is highly unlikely, and we cannot determine, that the jury ignored the stipulation that defendant was a convicted felon, especially in light of the parties' closing arguments that the only issue for the jury to decide was whether defendant possessed a weapon. Thus, the court correctly found that the jury resolved only the issue of whether defendant possessed a weapon, and it found that the State had not met its burden to prove that element.

¶ 33 Defendant next addresses the court's finding that the ultimate issue in the AUUW trial would be different than the issue decided at the UPWF trial. He disagrees with the court's determination that whether he "carried" a handgun, as required for AUUW, is a different question

than whether he "possessed" a firearm, as required for UPWF. Defendant notes that the terms "possess" and "carry" are not defined in the statute. He takes the position that the issue of whether he possessed a firearm encompasses the question of whether he carried said firearm. That is, defendant believes, one cannot carry a weapon without possessing it. "Carry," defendant notes, means "[t]o possess and convey (a firearm) in a vehicle, including the locked glove compartment or trunk of a car." Black's Law Dictionary (11th ed. 2019). "Possess" means "[t]o have in one's actual control; to have possession of." *Id.*; see *People v. Thompson*, 2023 IL App (1st) 220429-U, ¶¶ 30-32 (relying on dictionary definitions and rejecting argument that burden to prove possession of a firearm is higher than possession of firearm in a vehicle); see also *People v. Johnson*, 237 Ill. 2d 81, 97-98 (2010) (applying one-act, one-crime rule and vacating UPWF conviction; holding that convictions for UPWF and AUUW, as charged, were premised on same physical act of possessing a handgun on or about defendant's person). He also notes that the AUUW statute appears to use the terms "carry" and "possess" interchangeably, where it references knowing carry and that the person possessing the firearm does not have a valid FOID card. 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020).

¶ 34 The State disagrees with defendant's assertion that carrying a gun in a car is the same as possession for the AUUW count. The jury, it posits, could determine that actual control entails more ownership than mere carrying. The State also asserts that the question in the trial on UPWF was whether defendant knowingly possessed a firearm and had actual control. Here, the question will be whether defendant was carrying the gun in the vehicle.

¶ 35 We agree with defendant that a person cannot carry a weapon without also possessing it. "Carry" is defined as "[t]o possess and convey (a firearm) in a vehicle, including the locked glove compartment or trunk of a car." Black's Law Dictionary (12 ed. 2024) (citing *Muscarello v. United*

*States*, 524 U.S. 125, 126-27, 132, 134 (1998) (noting that the term " 'carry' implies personal agency and some degree of possession"; holding that the phrase "carries a firearm" in a federal sentencing enhancement statute is not limited to carrying of firearms on the person but includes knowingly possessing and conveying firearms in a vehicle, including in a locked glove compartment or car trunk)). The term "possess" is defined as "[t]o have in one's actual control; to have possession of." Black's Law Dictionary (12 ed. 2024). "Possession" is defined as "[t]he fact of having or holding property in one's power; the exercise of dominion over property" and "[t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object." Black's Law Dictionary (12 ed. 2024). In defining possession, the jury instructions here referred to having "immediate and exclusive control" over a thing.

¶ 36    Our conclusion is consistent with the court's statements in *Thompson*, observing that "the legal definition of the term 'carry' involves possession" and "the terms 'carry' and 'possess' relate to the same action when involving a firearm. And the language of the AUUW statute bears out the same conclusion." *Thompson*, 2023 IL App (1st) 220429-U, ¶ 32 (citing 720 ILCS 5/24-1.6 (West 2018)).

¶ 37    We also note that our conclusion is supported by the statutory language, which, as defendant notes, appears to use the terms "carry" and "possess" interchangeably. The AUUW statute provides that a person commits that offense when he or she "*[c]arries* \*\*\* in any vehicle \*\*\* any \*\*\* firearm [and] the person *possessing* the firearm" does not have a valid FOID card. (Emphases added.) 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2022).

¶ 38    Because the issue sought to be precluded—that defendant knowingly carried a firearm— was rejected by the jury at the first trial (*i.e.*, it rejected that defendant knowingly possessed the

firearm), the State is precluded from prosecuting defendant on the theory that he knowingly carried a firearm.[3]

¶ 39    In summary, the trial court erred in denying defendant's motion to bar prosecution of the AUUW count (count I). Given our resolution of the issue preclusion question, we need not reach defendant's double jeopardy argument.

¶ 40                                III. CONCLUSION

¶ 41    For the reasons stated, we reverse the judgment of the circuit court of Kane County.

¶ 42    Reversed.

---

[3]We note that the Supreme Court of Iowa held that a defendant did not waive his issue preclusion protection, and it affirmed the dismissal of a charge of failure to affix a drug tax stamp, where the defendant was previously acquitted of a severed charge of possession with intent to deliver a controlled substance and where possession was an element of both offenses. *State v. Butler*, 505 N.W.2d 806, 808-10 (Iowa 1993). The court reasoned that the defendant was attempting to use issue preclusion as a shield to prevent the prosecution from relitigating the issue of possession, which was decided at the prior trial. *Id.* at 810.

---

### *People v. Collins*, 2024 IL App (2d) 240005

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 21-CF-1729; the Hon. David Paul Kliment, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Zachary Wallace, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---