2024 IL App (2d) 230584-U
No. 2-23-0584
Order filed November 12, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-CF-1729 |
| TERRY T. COLLINS, | ) ) ) | Honorable David Paul Kliment, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court did not err in dismissing possession-of-a-firearm count after defendant had severed, and was acquitted of, UPWF charge, where issue preclusion applied to bar prosecution, as both offenses shared a common element that was litigated and decided in defendant's favor at UPWF trial.  Affirmed.

¶ 2  Defendant, Terry T. Collins, was indicted for two counts of aggravated unlawful use of a weapon (AUUW) (counts I and II) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(2), (a)(3)(C) (West 2020)), possession of a firearm-not eligible for a Firearm Owners Identification (FOID) card (count III) (430 ILCS 65/2(a)(1) (West 2020)), and unlawful possession of a weapon by a felon (UPWF) (count IV) (720 ILCS 5/24-1.1(a) (West 2020)).  The trial court granted defendant's

motion to sever the UPWF charge from the remaining charges. The State dismissed count II and elected to proceed to trial first on the UPWF charge.

¶ 3    At trial, the parties stipulated that defendant had been convicted of a felony on March 31, 2011. The jury returned a general verdict, finding defendant not guilty of UPWF. Defendant then moved to bar prosecution of the remaining counts based upon collateral estoppel/issue preclusion[1] and double jeopardy. The trial court granted the motion in part, dismissing count III and denying the motion as to the AUUW count (count I). The parties each filed motions to reconsider, which the court denied. The State appeals (Ill. S. Ct. R. 604(a)(1) (eff. Apr. 15, 2024)), arguing that the court erred in dismissing count III, as prosecution of the charge is not barred by either double jeopardy or issue preclusion, where the remaining counts were severed on defendant's own motion and each contain different elements.[2] We affirm.

¶ 4                              I. BACKGROUND

¶ 5    On February 8, 2022, the State charged defendant in a four-count indictment with two counts of AUUW, possession of a firearm-not eligible for a FOID card, and UPWF. Before trial, the State dismissed one AUUW count, and defendant moved to sever the UPWF count (on the basis that proof that he was previously convicted of a felony, which was required for the UPWF count, could prejudice him as to the remaining counts). The State did not object to severing the

---

[1]We hereinafter use "issue preclusion" instead of "collateral estoppel." *People v. Jefferson*, 2024 IL 128676, ¶ 2 n.1 (noting the Supreme Court's preference for issue preclusion over collateral estoppel in the double jeopardy context).

[2]In appeal No. 2-24-0005, defendant appeals from the denial of his motion as to the AUUW charge.

charge, and the trial court granted defendant's motion to sever. The State elected to proceed to trial on the UPWF charge (count IV) first.

¶ 6 The jury trial on count IV commenced on August 21, 2023. Kane County sheriff's detective Luke Weston testified that, on September 25, 2021, at about 8:30 p.m., he was patrolling on I-90 between Hampshire and Huntley and observed a white BMW X5 with Minnesota license plates commit two traffic violations: changing lanes without signaling and following another vehicle dangerously close. Weston conducted a traffic stop. He testified that the BMW took a "long time" to pull over. Weston approached the vehicle at the rear passenger side, and the back seat occupant—defendant—rolled down the window. The driver was Jimmy Barker, and the front-seat passenger was William Heart. Weston smelled a strong odor of burnt and raw cannabis coming from the vehicle. He called for backup.

¶ 7 Deputy Steven Benson arrived. The officers moved the occupants to their squad cars and, after obtaining Barker's consent, searched the BMW. Benson located a burnt cannabis blunt in the front center console and a cannabis blunt roller in the front compartment. The vehicle was a hatchback; thus, the officers could access the trunk from the rear passenger seats. They folded the rear passenger seat and located a black bag in the trunk. Inside the bag was a grey Polymer80 firearm with a full magazine and one bullet in the chamber. Weston explained that the rear seat did not completely block access to the trunk area when it was upright, and a person in the rear seat could reach back to the trunk area. The Polymer80 is a "ghost gun" with no serial number that can be purchased off the Internet unassembled. Deputy Jeremy Jorgensen arrived at the scene.

¶ 8 After Weston gave defendant *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant initially denied to Weston that the gun was his. However, afterward, he stated that he would take ownership of it because the driver was on his way to see his grandmother, who

was dying. According to defendant, they intended to stay a couple of days, but Weston did not locate any clothing for defendant in the BMW, defendant had no identification, and defendant advised he had no cell phone. Weston advised defendant that all three occupants were felons and that it was not his intention to charge the wrong person "with the gun." Subsequently, defendant stated that he purchased the gun online for a couple of hundred dollars and had put the gun in the trunk when Weston pulled over the BMW. Defendant described the bag that contained the gun (black with the word "cookies" on it but did not mention there was camouflage on it), the gun itself (contained a full magazine), and the ammunition (silver).

¶ 9 Weston further testified that Barker seemed in a hurry to leave, appeared nervous, and stated that he was on parole/probation and had not advised his parole/probation officer that he was leaving Minnesota. Barker's phone contained a picture of a man with a mask, holding a gun to someone's head.

¶ 10 Weston testified that he asked defendant questions to ensure that defendant was not taking the blame for someone else. Weston saw defendant fall at one point, and Benson helped defendant get up and escorted him to Jorgensen's squad car. Defendant was cooperative during the interaction. Barker had about $1700 or $1800 on his person, and Heart had about $1000 on him. Defendant was arrested for possessing a firearm. Barker and Heart were released from custody. A family member of Barker's confirmed that a relative was in the hospital.

¶ 11 Based on his training and experience, Weston testified that I-90 is a drug corridor between Minnesota and Chicago. He believed that the story—about going to a hospital in Chicago without knowing its address—was similar to his experiences with drug smugglers.

¶ 12 Deputy Benson testified that he responded to the stop and saw defendant in the back seat of the BMW. Benson smelled the odor of burnt and raw cannabis emanating from the passenger

side of the vehicle, and Heart showed him a blunt "they" had been smoking. During the search, Benson located in the center console area where Heart had been a blunt roller, a blunt, and a small amount of leafy substance that appeared to be cannabis. While Benson spoke to defendant, defendant yawned, stated he felt dizzy, and fell to the ground. Defendant stated he did not need an ambulance and was having a back spasm.

¶ 13    Deputy Jorgensen testified that he arrived at the scene at about 9:14 p.m. He saw defendant fall to the ground. Defendant declined an ambulance, explaining he had a back spasm. Defendant told Jorgensen that he had drilled holes in the firearm where the retaining pins are placed. Jorgensen testified that Weston mentioned Polymer80 before defendant did.

¶ 14    A joint stipulation, People's exhibit No. 13, was admitted into evidence. It stated, "On March 31, 2011, [defendant] was convicted of a felony." During closing arguments, the prosecution noted that it was required to prove beyond a reasonable doubt both elements of UPWF (*i.e.*, knowingly possessing a firearm and having a prior felony conviction) but, as to the felony-conviction element, stated that "[t]his has already been done away with." "The defense stipulates and the evidence has been received that the defendant is a convicted felon. This has been met by agreement of both parties." Thus, the "second proposition, [is] not in dispute. The only dispute here is the first proposition, whether the defendant knowingly possessed that firearm." Similarly, defense counsel addressed the felony-conviction element and stated that defendant and his attorneys "all agree that the State has proven, we've all signed that stipulation the State read to you saying yes, [defendant]—you heard the stipulation, it said—you heard it—said and admitted that in 2011 he was convicted of a felony. This is off your plate." Counsel also noted that defendant told police that he was a convicted felon. The jury was instructed that the State was required to

prove both elements of the offense beyond a reasonable doubt: (1) "That the defendant knowingly possessed a firearm," and (2) that he "had previously been convicted of a felony."

¶ 15    On August 22, 2023, the jury found defendant not guilty.  Subsequently, on September 12, 2023, defendant moved to bar prosecution of counts I (AUUW) and III (possession of a firearm-not eligible for FOID card), arguing that issue preclusion and the guarantee against double jeopardy precluded their prosecution.  Defendant noted the joint stipulation and argued that the ultimate issue decided by the jury was whether defendant knowingly possessed a firearm, which was also an element in both counts I and III.

¶ 16    As relevant here, the trial court granted defendant's motion as to count III, finding that both count III and the UPWF count had an identical element: knowingly possessing a firearm.  It further noted that the UPWF count also included the element that defendant is a convicted felon (which was stipulated to at the first trial) and that count III included the element that defendant did not have, and was not eligible to have, a valid FOID card.  As to the FOID-card element, the court noted that it was a different element than the element that was stipulated to but determined that the State would not "have any difficulty proceeding, so the defendant essentially will go on trial again in count [III] and the jury will have to determine for [a] second time whether he knowingly possessed a firearm."  The court found that this was "wrong and is barred" and granted defendant's motion with respect to count III.  The State moved to reconsider, and the trial court denied the State's motion, noting that count III was dismissed based on issue preclusion.  It also found that the "language is different.  The jury instruction would be different.  The jury could find differently."  The State appeals.

¶ 17                                    II. ANALYSIS

¶ 18    The State argues that the trial court erred in dismissing the possession-of-a-firearm-not-eligible-for-a-FOID-card charge (count III).  It contends that the counts in the indictment were severed on defendant's motion and that each of the counts contain separate elements.  Supreme Court and related precedent, it asserts, instruct that double jeopardy and issue preclusion are not available to bar prosecution of count III.  For the following reasons, we conclude that issue preclusion bars prosecution of count III and, accordingly, affirm the trial court's ruling.

¶ 19    The application of issue preclusion also presents a question of law that we review *de novo*. *People v. Sutherland*, 223 Ill. 2d 187, 197 (2006); *People v. Christian*, 2016 IL App (1st) 140030, ¶ 80.

¶ 20    As charged here, a person commits UPWF (count IV) if he or she "knowingly possess[es] on or about his [or her] person *** any firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction."  720 ILCS 5/24-1.1(a) (West 2020).  Thus, the State must prove that defendant: (1) has a prior felony conviction; and (2) knowingly possessed a firearm.  A person commits possession of a firearm-not eligible for FOID card (count III) when he or she "acquire[s] or possess[es] any firearm *** without having in his or her possession a [FOID] Card."  430 ILCS 65/2(a)(1) (West 2020).  Thus, both charges require the State to prove that defendant possessed a firearm.

¶ 21    The State argues that issue preclusion also cannot be applied against it here because we cannot speculate as to the findings underlying the jury's not-guilty verdict on count IV.  It notes that the jury was instructed that it needed to find that the prosecution proved beyond a reasonable doubt all the elements of UPWF, including whether defendant had previously been convicted of a felony.  It further notes that the jury was given a general verdict form, and there was no specific finding on any specific issue.  A finding of not guilty, the State argues, cannot be equated to a

finding that defendant did not possess a weapon. See *People v. Barnard*, 104 Ill. 2d 218, 227 (1984) (a "finding of not guilty of armed violence based on murder is not a finding that the defendant did not commit murder"); *People v. Rollins*, 140 Ill. App. 3d 235, 242 (1985) ("finding of not guilty of armed violence based on aggravated battery is not a finding that the defendant did not commit aggravated battery"). This court cannot speculate, the State suggests, as to why the jury returned a not guilty verdict or even if it returned a not guilty verdict for impermissible reasons. Thus, the State reasons, a finding of guilty on count III cannot be barred by a prior finding related to count IV (where defendant was found not guilty) and count III should be reinstated.

¶ 22    Defendant responds that the parties stipulated to his prior felony conviction and, thus, the only question for the jury to decide was whether he knowingly possessed a firearm. The State's theory was that the firearm found inside the vehicle belonged to defendant; and the defense argued that the gun did not belong to defendant and suggested that he eventually took responsibility for the firearm so that the driver could get to the hospital to visit his dying grandmother. The not-guilty verdict, defendant argues, indicated that the jury rejected the State's evidence that defendant possessed a gun. Both counts III (possession of a firearm-not eligible for FOID card) and IV (UPWF) involve the same element—the knowing possession of a firearm. Because count III was based on the same incident, he argues, a trial on that charge would require a second jury to resolve the same question of whether defendant possessed the gun that was already decided in his favor at the first trial. Thus, defendant asserts, issue preclusion bars the relitigation of this issue in a subsequent trial on count III.

¶ 23    Issue preclusion, "in the criminal context, is a component of the double jeopardy clause." *People v. Fort*, 2017 IL 118966, ¶ 34. Under the issue preclusion doctrine, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be

litigated between the same parties in any future lawsuit. *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); see also *People v. Tenner*, 206 Ill. 2d 381, 396 (2002) (noting that issue preclusion bars the litigation of an issue that was decided in a prior case). The party seeking to invoke issue preclusion must show that (1) the issue sought to be precluded was raised and litigated in a previous proceeding, (2) the determination of the issue was a critical and necessary part of the final judgment in a prior trial, and (3) the issue is the same one decided in the previous trial. *People v. Jones*, 207 Ill. 2d 122, 139 (2003). Where a defendant claims that a previous acquittal bars a subsequent prosecution for a related offense, issue preclusion requires a court to examine the record of the prior proceeding and determine whether a rational jury could have grounded its verdict on an issue other than the one that the defendant seeks to foreclose from consideration. *Ashe*, 397 U.S. at 444.

¶ 24 As noted, the jury here returned a general verdict.

"When a jury returns a general verdict, it can be difficult to ascertain which facts the jury found to be unproved; the difficulty, however, is not insuperable. *People v. Ward*, 72 Ill. 2d 379, 383 (1978). The court must ' "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." ' *Ashe*, 397 U.S. at 444 (quoting D. Mayers & F. Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 38-39 (1960)). *** The court may not find, for instance, that the jury ' "disbelieved substantial and *uncontradicted* evidence of the prosecution on a point the defendant did not contest." ' *Id.* n.9 (quoting 74 Harv. L. Rev. at 38). The court must set its inquiry 'in a practical frame' (*id.* at 444) and assume that the jury did not reach its

verdict through ' "mental gymnastics" ' (*People v. Borchers*, 67 Ill. 2d 578, 589 (1977) (quoting *Johnson v. Estelle*, 506 F.2d 347, 352 (5th Cir.1975))." (Emphasis added.) *People v. Wharton*, 334 Ill. App. 3d 1066, 1078 (2002).

¶ 25 We conclude that the State's argument is unavailing. People's exhibit No. 13, the joint stipulation, was admitted into evidence and provided that, "On March 31, 2011, [defendant] was convicted of a felony." During closing arguments, the prosecution noted that it was required to prove both elements beyond a reasonable doubt but, as to the felony-conviction element, stated that, "This has already been done away with." "The defense stipulates and the evidence has been received that the defendant is a convicted felon. This has been met by agreement of both parties." Thus, the "second proposition, [is] not in dispute. The only dispute here is the first proposition, whether the defendant knowingly possessed that firearm." Similarly, defense counsel addressed the felony-conviction element and stated that defendant and his attorneys "all agree that the State has proven, we've all signed that stipulation the State read to you saying yes, [defendant]—you heard the stipulation, it said—you heard it—said and admitted that in 2011 he was convicted of a felony. This is off your plate." Defense counsel also noted that defendant told police that he was a convicted felon. Of course, the jury was instructed that the State was required to prove *both* elements of the UPWF offense: "That the defendant knowingly possessed a firearm"; and that he "had previously been convicted of a felony." The jury was not required to find in defendant's favor on the second element; however, given the stipulation, it is highly unlikely the jury ignored that it was undisputed that defendant was a convicted felon. *Wharton*, 334 Ill. App. 3d at 1078. Given this posture, including the State's position at closing that the jury needed to determine *only* the knowing-possession element and notwithstanding the fact that the jury signed a general verdict form (although the better practice would have been to seek special interrogatories), we can only

conclude that the jury found defendant not guilty based on its determination that the State did not meet its burden to prove that he knowingly possessed a firearm. Accordingly, as the issue of whether defendant knowingly possessed a firearm was litigated in the first trial, the State is precluded from relitigating that issue at a trial on count III (unlawful possession of a firearm-no valid FOID card). Further, as it cannot litigate one of the elements of count III, the trial court did not err in dismissing the entire count.

¶ 26    Given our resolution of the issue preclusion issue, we need not address the State's double jeopardy argument.

¶ 27                                     III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.