**2026 IL 131300**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 131300)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TERRY T. COLLINS, Appellee.

*Opinion filed May 21, 2026.*

CHIEF JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Justices Overstreet, Holder White, Cunningham, Rochford, O'Brien, and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     Terry Collins was charged in count I with aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020)), in count II with AUUW (*id.* § 24-1.6(a)(1), (a)(3)(A-5)), in count III with possessing a gun without a Firearm Owners Identification (FOID) card (430 ILCS 65/2(a)(1) (West 2020)), and in count IV with unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2020)). Collins made a motion to sever count IV, the

UPWF count, from the other counts, and the circuit court allowed the unopposed motion. The State dismissed count II and made an election to prosecute count IV, the UPWF count.

¶ 2 At the trial on the UPWF count, the parties stipulated that Collins had been convicted of a felony. The sole disputed fact was whether Collins possessed the firearm. The jury returned a general verdict and acquitted Collins on the UPWF count. Collins filed a motion to dismiss the other counts. He argued the jury's factual finding barred the State from proving that he possessed the gun at issue and the remaining counts also depended on proof of possessing a gun. The circuit court granted Collins's motion in part, dismissing count III, the FOID card count, but denied the motion with respect to count I, the AUUW count. Collins filed an appeal in the appellate court.

¶ 3 In an order filed under Illinois Supreme Court Rule 23 (eff. Feb. 1, 2023), the appellate court affirmed the circuit court's dismissal of the FOID card count, holding that the doctrine of issue preclusion bars prosecution of that count. 2024 IL App (2d) 230584-U, ¶¶ 18-29. In a published opinion, the appellate court reversed the circuit court's denial of Collins's motion to dismiss count I, the AUUW count, concluding that the doctrine of issue preclusion barred prosecution of the AUUW count. 2024 IL App (2d) 240005, ¶¶ 24-42.

¶ 4 On appeal to this court, the State argues that Collins may not invoke issue preclusion principles under the federal and state constitutions or under state common law or statutory provisions to bar a trial on both the AUUW and FOID counts, which were severed from the UPWF count. Specifically, the State argues that *Currier v. Virginia*, 585 U.S. 493 (2018), a case interpreting the federal double jeopardy clause, requires this court to interpret Illinois common law and statutory law consistent with the federal double jeopardy clause. We disagree and hold that *Currier* does not affect Illinois courts' interpretation of its common law or of the plain language of section 3-4(b)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/3-4(b)(2) (West 2020)), which provide broader issue preclusion protections for defendants. Accordingly, we affirm the appellate court's judgment that reversed the circuit court's order.

- 2 -

¶ 5                                    I. BACKGROUND

¶ 6            On September 25, 2021, Kane County sheriff's detective Luke Weston saw a car on I-90 following another car too closely and changing lanes without signaling. Weston ordered the car to stop. When he approached the car, Terry Collins, in the back seat, rolled down his window. Weston smelled burnt and raw cannabis. He searched the car and found a loaded firearm in a bag in the car's trunk. After a brief discussion, Weston arrested Collins.

¶ 7            On February 8, 2022, prosecutors charged Collins with (count I) AUUW carrying a gun in a car without an FOID card (*id.* § 24-1.6(a)(1), (a)(3)(C)); (count II) another AUUW charge that prosecutors voluntarily dismissed before trial; (count III) possession of a firearm without an FOID card (430 ILCS 65/2(a)(1) (West 2020)) (not involved in the current appeal); and (count IV) UPWF (720 ILCS 5/24-1.1(a) (West 2020)).

¶ 8            Count I, the AUUW count, alleged that Collins "knowingly carried" a firearm when at the time he "had not been issued a currently valid [FOID] Card." Count III, the FOID count, alleged that Collins "knowingly possessed" a firearm "without having in his possession a [FOID] Card previously issued" and at the time of not possessing the FOID card, he was "not eligible to possess a [FOID] Card." Count IV, the UPWF count, alleged that Collins "knowingly possessed" a firearm after having been "convicted of a felony."

¶ 9                          A. The Circuit Court Proceedings

¶ 10           Collins moved to sever count IV (the UPWF count) from counts I and III on grounds that proof of his prior felony would prejudice the jury against him in the trial for AUUW. The State did not object to the motion to sever, and on August 17, 2023, the circuit court allowed the motion.

¶ 11           On August 21, 2023, the jury trial commenced, and Weston testified that, at the scene of the stop, Collins at first said he did not know there was a firearm in the car but later he said that in the interest of ending the stop quickly, so that the driver could get to see his grandmother in the hospital, Collins would say he owned the gun. According to Weston, Collins said he purchased the gun online, and Collins

correctly described the gun. Weston confirmed with another source that the driver's grandmother was hospitalized.

¶ 12     At trial, the parties' joint stipulation, People's exhibit No. 13, was admitted into evidence, stating that on March 31, 2011, Collins had a prior felony conviction. During closing arguments, both parties told the jurors that, because of the stipulation, the jury only needed to decide whether Collins knowingly possessed the firearm Weston found.

¶ 13     On August 22, 2023, the jury found Collins not guilty of UPWF. On September 12, 2023, Collins filed a motion to bar prosecution of counts I and III, the AUUW and FOID counts, and to dismiss the two counts "pursuant to the doctrine of collateral estoppel and the guarantee against double jeopardy provided by the Illinois and United States Constitutions"[1] because both counts required proof that Collins knowingly possessed the gun.

¶ 14     After a hearing on the motion, the circuit court in an order dated October 10, 2023, granted Collins's motion with respect to count III, the FOID count not now before this court, but denied the motion with respect to count I, the AUUW count. The circuit court determined that the jury resolved only the possession issue at the UPWF trial, as the parties had stipulated to the felony-conviction element of that offense. The court reasoned that the AUUW count involved a different element— knowingly carrying a firearm—rather than knowingly possessing one.

¶ 15     On November 2, 2023, both parties filed motions to reconsider. Collins argued that the court erred in failing to dismiss the AUUW count, because the question of whether Collins knowingly possessed a firearm encompassed the question of whether he knowingly carried the same firearm. The State's motion argued that the court erred in granting the motion to dismiss the FOID card count because Collins could not rely on double jeopardy protections because he moved to sever the related weapons counts before trial. On December 8, 2023, the trial court denied both

---

[1]In its opening brief on appeal, the State acknowledges that this court, in *People v. Jefferson*, 2024 IL 128676, ¶ 2 n.1, has interpreted "collateral estoppel" to more commonly mean "issue preclusion" and has established that it will employ the more common meaning of issue preclusion. This opinion will also treat any reference to collateral estoppel as issue preclusion.

motions. Collins appealed the order denying the motion to dismiss the AUUW count, and the State appealed the order dismissing the FOID count.

¶ 16                                B. The Appellate Court Proceedings

¶ 17        Collins argued on appeal that prosecuting him for an AUUW violation would violate principles of double jeopardy and issue preclusion. 2024 IL App (2d) 240005, ¶ 18.

¶ 18        The appellate court filed an order in the State's appeal but filed an opinion in Collins's appeal. The appellate court affirmed the circuit court's dismissal of the FOID card charge, holding that the doctrine of issue preclusion bars prosecution of that charge. 2024 IL App (2d) 230584-U, ¶¶ 18-29. In a published opinion, the appellate court reversed the circuit court's denial of Collins's motion to dismiss the AUUW count, concluding that the doctrine of issue preclusion barred prosecution of the AUUW count because his acquittal on count IV, the UPWF count, precluded the State from proving possession, and count I, the AUUW count, required proof that the defendant possessed the gun. 2024 IL App (2d) 240005, ¶¶ 24-42.

¶ 19        We granted the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Dec. 7, 2023). For the following reasons, we now affirm the judgment of the appellate court.

¶ 20                                        II. ANALYSIS

¶ 21        The State argues that *Currier* mandates a finding that Collins waived any argument based on issue preclusion when he moved to sever the charges. Specifically, the State argues that the issue-preclusion component of the federal and state constitutions' double jeopardy clauses does not apply when a defendant requests or consents to separate trials on related charges. The State also argues that a defendant who requests or consents to separate trials on related charges cannot invoke statutory or common-law principles of issue preclusion to avoid standing trial on all charged offenses. We disagree.

¶ 22                              A. Standard of Review

¶ 23    The State argues that *Currier* mandates a finding that Collins waived his argument based on the doctrine of issue preclusion when he moved to sever the charges. Because our decision depends solely on the application of the doctrine of issue preclusion to uncontested facts, we review the lower courts' decisions *de novo*. See *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010) ("The applicability of the doctrine of collateral estoppel is a question of law that we review *de novo*."); *People v. Sutherland*, 223 Ill. 2d 187, 197 (2006) (courts review *de novo* issues of collateral estoppel).

¶ 24                              B. *Currier v. Virginia*

¶ 25    To find a way around the doctrine of issue preclusion and the conclusion that the acquittal for UPWF bars prosecution for AUUW, the State relies on *Currier*, 585 U.S. 493. In *Currier*, a grand jury indicted Currier on charges of burglary and unlawful possession of a firearm by a convicted felon. *Id.* at 497. The prosecutors and Currier agreed to sever the charges. *Id.* The prosecutors first tried the burglary charge, and the jury acquitted Currier. *Id.* Currier then filed a motion to dismiss and invoked the doctrine of issue preclusion in an attempt to bar the State from presenting evidence of the alleged burglary in the felon-in-possession trial. *Id.* at 497-98. The trial court denied Currier's motion, and the jury, after listening to evidence that Currier participated in the burglary of guns, found Currier guilty of the felon-in-possession charge. *Id.* at 498.

¶ 26    Currier argued on appeal that the presentation of evidence of the burglary violated the double jeopardy clause of the federal constitution. See U.S. Const., amend. V. Currier relied on *Ashe v. Swenson*, 397 U.S. 436, 443 (1970), which set out the general principle that, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." The court held that the principle of collateral estoppel is "fully applicable to a former judgment in a criminal case" and specifically added, "The ultimate question *** is whether this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is." (Internal quotation marks omitted.) *Id.* at 443, 445.

¶ 27    The *Currier* majority ignored the reasoning of *Ashe* and reinterpreted the decision to apply issue preclusion as part of the double jeopardy clause only when a trial on the second charge "would be tantamount to the forbidden relitigation of the same offense resolved at the first trial." *Currier*, 585 U.S. at 499. The *Currier* majority relied on precedent that held " 'there is no violation of the Double Jeopardy Clause when [the defendant] elects to have the *** offenses tried separately and persuades the trial court to honor his election.' " *Id.* at 500-01 (quoting *Jeffers v. United States*, 432 U.S. 137, 152 (1977)).

¶ 28    The *Currier* majority found the holding of *Jeffers* applicable to issue preclusion: "If a defendant's consent to two trials can overcome concerns lying at the historic core of the Double Jeopardy Clause, so too we think it must overcome a double jeopardy complaint under *Ashe*." *Id.* at 501. The majority held that the double jeopardy clause did not bar the State from trying again to prove that Currier participated in a burglary of guns, in its prosecution of Currier for UPWF.

¶ 29    The author of *Currier* (in a section not joined by a majority of the Court) added that "issue preclusion principles should have only guarded application *** in criminal cases," because the double jeopardy clause "barred only repeated prosecution for the same identical act and crime, not the retrial of particular issues or evidence." (Emphasis and internal quotation marks omitted.) *Id.* at 504 (opinion of Gorsuch, J., joined by Roberts, C.J., and Thomas and Alito, JJ.).

¶ 30    *Currier* established a federal constitutional baseline—a defendant who consents to sever counts in a multiple-count information or indictment cannot invoke the double jeopardy clause to bar a second prosecution of the nonstricken counts based on the doctrine of issue preclusion. However, states are free to provide greater protections to defendants via state common law, state constitutions, or state statutes. See *id.* at 510 (states are empowered to adopt new laws regarding issue preclusion); see also 720 ILCS 5/3-4(b)(2) (West 2020).

¶ 31                   C. The Equitable Doctrine of Issue Preclusion

¶ 32    Issue preclusion is an equitable doctrine and promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*,

195 Ill. 2d 71, 77 (2001). When a trier of fact resolves an issue in one trial and the same parties raise the same issue of fact in a second trial, the adjudication at the first trial " 'will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not.' " *People v. Haran*, 27 Ill. 2d 229, 231 (1963) (quoting *Hoffman v. Hoffman*, 330 Ill. 413, 417 (1928)). Under the issue preclusion doctrine, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. Indeed, the major premise from *Ashe* is that the defendant is entitled to the favorable jury finding, having run the gauntlet in the previous trial and having faced the possibility of criminal punishment.

¶ 33        Illinois courts have referred to this doctrine as "estoppel by verdict" (*Hoffman*, 330 Ill. at 417), "collateral estoppel" (*Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001)), or "issue preclusion" (*People v. Jefferson*, 2024 IL 128676, ¶ 36). In Illinois, the doctrine applies in both civil and criminal cases. *Haran*, 27 Ill. 2d at 232. This doctrine has its roots in our common law and statutory law.

¶ 34                        D. Illinois Common Law and Issue Preclusion

¶ 35        Common law is the body of law derived from judicial decisions, rather than from statutes or constitutions. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 305 (2010). In other words, the common law includes those rules of law that rest for their authority upon statements of principles found in the decisions of the courts. *Id.* The common law of England was first adopted by the Illinois General Assembly in 1819 and codified in the Common Law Act. See 5 ILCS 50/1 (West 2020) ("Rule of decision"; expressly adopting the common law as the rule of decision in Illinois courts). Therefore, common law is the law of the state existing by authority of the state, as much as statutory law is the law of the state. *Id.*; *Kreitz v. Behrensmeyer*, 149 Ill. 496, 502 (1894); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); 15A Am. Jur. 2d *Common Law* § 3 (Feb. 2026 Update). Accordingly, common law, when it can be authentically established and sustained, is of equal authority and binding force to laws enacted by a state legislature. See *Kreitz*, 149 Ill. at 503; *Erie R.R. Co.*, 304 U.S. at 79; *Komorowski*

*v. Boston Store of Chicago*, 341 Ill. 126, 129-30 (1930); 11 Ill. L. and Prac. *Common Law* § 3 (Feb. 2026 Update).

¶ 36    The common-law doctrine of issue preclusion has been an established rule of Illinois law for well over 140 years. This court in *Hanna v. Read*, 102 Ill. 596, 602-03 (1882), stated that,

> "where some specific fact or question has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not. This species of estoppel is known to the law as an estoppel by verdict ***."

See *Public Utilities Comm'n v. Smith*, 298 Ill. 151, 161-62 (1921); *Board of Directors of Chicago Theological Seminary v. People ex. rel. Raymond County Collector*, 189 Ill. 439, 443 (1901); *Young v. People ex rel. Kochersperger*, 171 Ill. 299, 303 (1898); *Markley v. People ex rel. Kochersperger*, 171 Ill. 260, 262-63 (1898); *Louisville, New Albany & Chicago Ry. Co. v. Carson*, 169 Ill. 247, 251 (1897); *Leopold v. City of Chicago*, 150 Ill. 568, 573-74 (1894); *Wright v. Griffey*, 147 Ill. 496, 498 (1893). The Hanna court reasoned that

> "[w]hether the adjudication relied on as an estoppel goes to a single question, or all the questions involved in a cause, the fundamental principle upon which it is allowed in either case is, that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties, where the same question or questions arise." 102 Ill. at 603.

¶ 37    And in *Hoffman*, 330 Ill. at 417, this court further explained that

> "[t]he rule in respect to the conclusiveness of the verdict and former trial between the same parties, when the judgment is used in pleading as a technical estoppel or is relied on by way of evidence as conclusive *per se*, is, that it must appear by the record of the prior suit that the particular controversy sought to be construed was necessarily tried and determined[ ]—that is, if the record of

the former trial shows that the verdict could not have been rendered without deciding the particular matter it will be considered as having settled that matter as to all further actions between the parties."

Moreover, in *Haran*, 27 Ill. 2d at 232, this court found that, "[w]hile this doctrine is more frequently invoked in civil cases, there is no doubt but that it applies equally in criminal cases." See *People v. Williams*, 59 Ill. 2d 557, 560-61 (1975) (same). Therefore, for more than 140 years, Illinois courts have applied the doctrine of issue preclusion as a well-established and long-standing principle of the common law of Illinois. See *Board of Trustees of Community College District No. 508 v. Coopers & Lybrand*, 208 Ill. 2d 259, 269 (2003) (common-law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision).

¶ 38                            E. Section 3-4(b)(2) of the Code

¶ 39      The Illinois General Assembly, in 1961, codified the doctrine of issue preclusion in section 3-4(b)(2) of the Code, which provides:

"A prosecution is barred if the defendant was formerly prosecuted for a different offense, or for the same offense based upon different facts, if that former prosecution:

*** 

(2) was terminated by a final order or judgment *** that required a determination inconsistent with any fact necessary to a conviction in the subsequent prosecution[.]" 720 ILCS 5/3-4(b)(2) (West 2020).

¶ 40      The Illinois General Assembly, by adopting section 3-4(b)(2) of the Code (effect of former prosecution), codified issue preclusion as part of Illinois criminal law, not subject to the limitations stated in the principal opinion in *Currier*. Finally, Illinois recognizes the doctrine of issue preclusion as an independent common-law and statutory bar to a subsequent prosecution, which is intended, by Illinois courts and the Illinois legislature, to exceed the protections provided by the double jeopardy clause of the federal constitution.

¶ 41    The *Currier* opinion specifically noted the propriety of legislation like section 3-4(b)(2) when it noted:

> "The proper authorities, the States and Congress, are empowered to adopt new laws or rules experimenting with issue or claim preclusion in criminal cases if they wish. In fact, some States have already done so. On these matters, the Constitution dictates no answers but entrusts them to a self-governing people to resolve." *Currier*, 585 U.S. at 510 (opinion of Gorsuch, J., joined by Roberts, C.J., and Thomas and Alito, JJ.).

¶ 42    The plain language of section 3-4(b)(2) bars prosecution if the former prosecution resulted in a conviction or acquittal and the subsequent prosecution requires relitigation of a fact necessarily determined in the first proceeding. 720 ILCS 5/3-4(b)(2) (West 2020). The language of section 3-4(b)(2) enforces factual finality (not relitigating settled facts between the same parties). While the statute does provide exceptions to the broad issue preclusion doctrine (see *id.* § 3-4(d)), there is no exception based on a defendant's request to sever counts. This court is not at liberty to read into the statute limitations, exceptions, or conditions that do not exist. See *People v. Washington*, 2023 IL 127952, ¶ 27 ("Where the statutory language is clear and unambiguous, we interpret it without aids of construction and do not read into it 'exceptions, limitations, or conditions that the legislature did not express.' " (quoting *People v. Legoo*, 2020 IL 124965, ¶ 14)); *People v. Palmer*, 2021 IL 125621, ¶ 100 (Michael J. Burke, J., specially concurring, joined by Garman and Overstreet, JJ.) (same). Therefore, by enacting section 3-4(b)(2), the Illinois General Assembly expressed its intent to create issue preclusion as a separate state species of estoppel independent from those species of estoppel recognized in the double jeopardy clause of the federal constitution.

¶ 43    Additionally, the Illinois General Assembly enacted section 3-4(b)(2) in 1961 (see 1961 Ill. Laws 1983 (§ 3-4)), long before the United States Supreme Court, in 1970, held that issue preclusion is a constitutional requirement of the federal double jeopardy clause. See *Ashe*, 397 U.S. at 445-46. Thus, the doctrine of issue preclusion applies to Illinois criminal cases, regardless of the United States Supreme Court's interpretation of the double jeopardy clause in the United States Constitution. See *Haran*, 27 Ill. 2d at 231. The limitations the United States Supreme Court has placed on issue preclusion as a federal constitutional doctrine

have no bearing (1) on the Illinois courts' common-law pronouncements on issue preclusion or (2) on the reach or the meaning of section 3-4(b)(2) of the Code. See *Arizona v. Evans*, 514 U.S. 1, 8 (1995) (reasoning that states are permitted to interpret their own laws to provide greater protections than federal law requires).

¶ 44                           F. Issue Preclusion Bars Relitigation of
                                      Collins's Gun Possession

¶ 45        In the case at bar, the UPWF charge required the State to show that Collins (1) knowingly possessed a firearm and (2) had been convicted of a felony. 720 ILCS 5/24-1.1 (West 2020). Although the jury returned a general verdict, the parties had stipulated to and informed the jury in the UPWF trial that Collins had been previously convicted of a felony. In *Maple v. Gustafson*, 151 Ill. 2d 445, 449 (1992), this court found that "the jury returned a general verdict for the defendant; consequently, we do not know on what basis it found for defendant." See *Gaines v. Townsend*, 244 Ill. App. 3d 569, 575 (1993); 75B Am. Jur. 2d *Trial* § 1444 (Feb. 2026 Update) (defining a general verdict as a verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions); Black's Law Dictionary (12th ed. 2024) (a general verdict is defined as a verdict whereby the jury finds either for the plaintiff or the defendant in general terms). There are instances where a court can conclude from a general verdict the issue decided. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. *Ashe*, 397 U.S. at 444. After reviewing the record, we found the only issue for the jury to resolve was whether Collins knowingly possessed the gun. Therefore, when the jury returned a general verdict, it found that the State failed to prove beyond a reasonable doubt that Collins possessed the firearm.

¶ 46        The AUUW count required the State to prove that Collins knowingly carried in a vehicle (with exceptions not relevant here) any firearm, having not been issued a currently valid FOID card. 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020). In order for the State to establish that Collins knowingly carried the gun, the State was

required to show he (1) knowingly possessed and (2) knowingly transported the gun. *Carry* is defined as possessing and conveying (a firearm) in a vehicle. Black's Law Dictionary (12th ed. 2024); *United States v. James*, 464 F.3d 699, 705 (7th Cir. 2006) (" '[C]arry' *** mean[s] 'to move while supporting: TRANSPORT.' [Citation.] *** [S]omething more than possession of the firearm *** [is] required to demonstrate carrying."); *Stanback v. United States*, 113 F.3d 651, 657 (7th Cir. 1997) ("What distinguishes 'carrying' is the connotation of transportation ***."). The parties informed the jury in the UPWF trial that Collins had been previously convicted of a felony, and the only issue for the jury to resolve was whether he knowingly possessed the gun. Possession is defined as the fact of having or holding property in one's power: the exercise of dominion over property. Black's Law Dictionary (12th ed. 2024). In addition, the State proffered jury instruction No. 18A, which defined possession as when a person "has immediate and exclusive control over a thing."

¶ 47        The jury resolved the issue of gun possession in Collins's favor when it acquitted him of the UPWF charge. Because the acquittal in Collins's UPWF case was based on a finding of a specific fact—that Collins did not possess a gun—in the judgment that was material and controlling in the UPWF case and also material and controlling in the AUUW case, Illinois's common law based on the doctrine of issue preclusion bars the State from trying to prove a second time that Collins possessed the gun. As the jury resolved in the UPWF case for the identical factual issue—Collins's possession of a firearm—that is required for the State to prove the offense of AUUW, Collins has carried his burden by presenting evidence that the issue whose relitigation he seeks to foreclose was decided in the prior proceeding. *People v. Daniels*, 187 Ill. 2d 301, 321 (1999); see *Williams*, 59 Ill. 2d at 563 (the court's holding determined the question that was common to the prosecutions under both indictments, and the State was precluded from litigating the question a second time). Therefore, because Collins has presented evidence that a jury in the UPWF case decided an issue and found that he did not possess a firearm and because Collins has presented evidence that possession of a firearm is the primary issue in the AUUW case, he has established that the doctrine of issue preclusion applies. See *Ashe*, 397 U.S. at 444. Accordingly, under Illinois common law (*Haran*, 27 Ill. 2d at 232) and section 3-4(b)(2) of the Code, the jury's verdict bars the State from trying a second time to prove a material issue in an AUUW prosecution: that Collins possessed the gun. Consequently, by being foreclosed from presenting evidence of

- 13 -

possession, the State cannot prove the AUUW charge. See *Yeager v. United States*, 557 U.S. 110, 122-23 (2009) (preserving the integrity of acquittals); *Hanna*, 102 Ill. at 603 (justice and public policy alike demand that a matter, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the parties, where the same question arises).

¶ 48                    G. Section 3-4(b)(2) Has No Severance Language

¶ 49        The State argues that Collins waived his right to assert the doctrine of issue preclusion when he moved to sever the counts. As issue preclusion arises only when a single fact has decisive effect on two separate criminal counts, cases in which the doctrine applies frequently involve counts so closely related that prosecution is appropriate in a single trial—unless in the interest of justice the court severs the counts. See 720 ILCS 5/3-3 (West 2020) (requiring joinder of closely related charges); *Ashe*, 397 U.S. at 438-40, 446 (after being acquitted of robbing one of several victims, the State tried the petitioner with robbing a second victim; the court reasoned that the name of the victim had no bearing upon the issue of whether the petitioner was one of the robbers (robberies of two separate victims in a single incident)); *Yeager*, 557 U.S. at 119-20 (fraud and money laundering charges presented in a single trial; after jury acquitted the defendant of fraud and reached no verdict on money laundering, issue preclusion barred the government from proving in the second trial any fact necessarily decided in the defendant's favor for the fraud verdict); *Harris v. Washington*, 404 U.S. 55, 55-56 (1971) (*per curiam*) (prosecutors charged the defendant with murdering one victim by sending a bomb through the mail; after a jury acquitted the defendant on that charge, the State charged defendant with the murder of a second victim of the bomb blast; the Court held that, because the verdict in the first trial rested on the failure to prove the defendant mailed the bomb, the first verdict barred the second prosecution); *Commonwealth v. Wallace*, 602 A.2d 345, 349-50 (Pa. Super. Ct. 1992) (Commonwealth's concession that the jury's acquittal meant appellant did not possess a gun collaterally estopped Commonwealth from any subsequent prosecution based on the appellant's possession of the gun).

¶ 50    The General Assembly could have used language that limited the reach of the issue preclusion doctrine if it intended for the court's allowance of a severance to bar application of the doctrine of issue preclusion. Instead, the plain language is silent as to such a limitation. The General Assembly made explicit exceptions to the reach of issue preclusion:

"A prosecution is not barred within the meaning of this Section 3-4, however, if the former prosecution:

(1) was before a court that lacked jurisdiction over the defendant or the offense; or

(2) was procured by the defendant without the knowledge of the proper prosecuting officer, and with the purpose of avoiding the sentence that otherwise might be imposed; or if subsequent proceedings resulted in the invalidation, setting aside, reversal, or vacating of the conviction, unless the defendant was thereby adjudged not guilty." 720 ILCS 5/3-4(d) (West 2020).

The statute and its specific exceptions make no mention of severance. Consequently, we find that Collins's motion to sever did not preclude him from relying on the doctrine of issue preclusion to bar the State's prosecution of his AUUW offense. See *State v. Butler*, 505 N.W.2d 806, 809 (Iowa 1993) (finding that defendant's motion to sever did not constitute waiver of his right to assert the collateral estoppel defense).

¶ 51                    H. The State Has Not Shown Collins Waived His
                           Right to Assert Issue Preclusion

¶ 52    The State has argued that Collins waived his right to assert issue preclusion. Waiver "is an intentional relinquishment or abandonment of a known right or privilege." (Internal quotation marks omitted.) *People v. Sophanavong*, 2020 IL 124337, ¶ 20. In *Currier*, Justice Ginsburg pointed out, in her dissent, that the State did not show Currier waived his right to assert issue preclusion because the record held "no suggestion that he expressly waived a plea of issue preclusion at a second trial." 585 U.S. at 520 (Ginsburg, J., dissenting, joined by Breyer, Sotomayor, and

- 15 -

Kagan, JJ.). The *Currier* majority's holding contravened the general principle that the "Court indulge[s] every reasonable presumption against waiver of fundamental constitutional rights." (Internal quotation marks omitted.) *Id.* at 521.

¶ 53 The State has not shown that Collins (1) was aware that moving to sever would result in the loss of his right to invoke the doctrine of issue preclusion or (2) abandoned his right to invoke issue preclusion when he moved for severance. See *People v. Lesley*, 2018 IL 122100, ¶ 50 (a defendant's waiver must be voluntary, knowing, and intelligent); *People v. Lego*, 168 Ill. 2d 561, 564 (1995) (requirement of a knowing and intelligent choice calls for a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it); *Wallace*, 602 A.2d at 349-50 (defendant's motion for severance did not waive argument for issue preclusion). Additionally, the plain language of the statute makes no mention of the effects of severance and makes no mention of waiver. Therefore, we hold that the record does not provide any evidence that Collins knowingly waived his common-law rights or his statutory rights, codified in section 3-4(b)(2) of the Code, to argue that issue preclusion barred the State from trying in a second trial to prove any fact issue necessarily resolved in Collins's favor in the first trial.

¶ 54       I. Invited Error and Fairness Do Not Foreclose
         Collins's Reliance on Issue Preclusion

¶ 55 The State separately argues that the doctrine of invited error forecloses Collins from invoking issue preclusion. "Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." *People v. Carter*, 208 Ill. 2d 309, 319 (2003). The doctrine discourages duplicity and combats the manifest unfairness that would arise if a party were to obtain reversal based on the very error that party injected into the proceedings. See *People v. Harvey*, 211 Ill. 2d 368, 385-86 (2004). Generally invited error is found in cases where a party asks the court to commit the error or at least explicitly agrees to the commission of the error. *People v. Childress*, 2024 IL App (4th) 240669-U, ¶ 23.

¶ 56 Here, Collins asked the circuit court to sever the charges. He has never argued that the circuit court erred by granting his request. Consequently, the doctrine of

invited error does not prevent Collins from relying on issue preclusion as a bar to further prosecution.

¶ 57    Finally, the State claims that applying issue preclusion here "would offend all notions of fair play." (Internal quotation marks omitted.) *Harvey*, 211 Ill. 2d at 385. This court explained in *Nowak*, 197 Ill. 2d at 391:

> "[issue preclusion] must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped. [Citations.] In deciding whether the doctrine of collateral estoppel is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. In determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the practical realities of litigation must be examined."

¶ 58    Collins is not attempting to use issue preclusion as a sword to prevent the State from having its one full opportunity to prosecute but as a shield to prevent the State from having two opportunities to litigate the issue of gun possession, which was decided in the prior trial. See *Ashe*, 397 U.S. at 446 (issue preclusion protects a man who has been acquitted from having to run the gauntlet a second time). We find that the State has had a full and fair opportunity to prove Collins possessed a gun and it failed to do so. Further, the State has not shown that holding it to the result of the first trial offends notions of fair play or why fair play requires a second opportunity for the State to prove what it failed to prove in the trial already concluded. Rather, it would seem to be a severe injustice to allow the State a second chance to convict Collins in a second trial simply because that count was severed in order to ensure an unprejudiced jury.

¶ 59                                    III. CONCLUSION

¶ 60    In sum, we find that Illinois common law and statutory law protects a defendant's right to assert that a prior adjudication bars the State from trying to persuade a second trier of fact of any common issue decided in his favor by the first trier of fact. We also find that Collins did not waive his right to assert the doctrine of issue preclusion when he moved to sever the trial on count IV, the UPWF count,

from a trial on count I, the AUUW count. We hold that the appellate court correctly held that the acquittal on the UPWF count, under the facts of this case, barred the State from trying a second time to prove Collins possessed the gun in count I, the AUUW count. Accordingly, we affirm the appellate court's decision reversing the circuit court's order denying Collins's motion to bar prosecution of the AUUW count.

¶ 61       Appellate court judgment affirmed.

¶ 62       Circuit court judgment reversed.